UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

JOSE PEREZ,

          Plaintiff,

     - against -

POSTGRADUATE CENTER FOR MENTAL
HEALTH,

          Defendant.

-----------------------------------------------------------------------x

       Case No.: 19-cv-00931 (EK)(PK)


## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT


       RESPECTFULLY SUBMITTED,

       **WILSON, ELSER, MOSKOWITZ,**
       **EDELMAN & DICKER LLP**
       **Attorneys for Defendants**
       **150 East 42nd Street**
       **New York, New York 10017-5639**
       **(212) 490-3000**
       **File No.: 01593.01592**


COUNSEL:   CELENA R. MAYO
       JOSEF K. MENSAH

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND..........................................................................................2

    The Evidentiary Record Establishes that Plaintiff Was Provided with Wage Notices
.....................................................................................................................................3

    The Evidentiary Record Establishes that Plaintiff Was Paid Appropriately
    Consistent with PCMH's Established Wage && Hour Policies &&
    Procedures.............................................................................................................4

    Plaintiff's Termination and Subsequent Legal Action.........................................6

STANDARD OF REVIEW .............................................................................................6

ARGUMENT ...................................................................................................................9

    POINT I      PLAINTIFF'S CLAIMS ARE TIME-BARRED AND THE
               EVIDENTIARY RECORD PRECLUDES THE APPLICATION
               OF EQUITABLE TOLLING........................................................9

        A.      The FLSA'S Two Year Limitations Period Applies Because the
             Evidentiary Record Precludes Plaintiff from Establishing
             Willfulness    9

        B.      Plaintiff Cannot Establish His Entitlement to Equitable Tolling or
             Demonstrate Willfulness......................................................................11

    POINT II     THE UNDISPUTED EVIDENTIARY RECORD ESTABLISHES
               THAT PLAINTIFF'S NEW YORK STATE OVERTIME CLAIMS
               FAIL BECAUSE HE WAS AN EXEMPT "RESIDENTIAL
               JANITOR" ..............................................................................13

    POINT III    PLAINTIFF'S WAGE, OVERTIME, ON CALL, AND MEAL
               BREAK CLAIMS ARE PRECLUDED BY THE UNDISPUTED
               EVIDENTIARY RECORD ......................................................14

        A.      The Documentary Evidence and Plaintiff's Own Admissions
             Preclude Plaintiff's Wage and Overtime Claims ......................................15

        B.      Plaintiff Cannot Establish PCMH had Actual or Constructive
             Knowledge of Alleged Additional Work Performed................................17

         C.      The Evidentiary Record Precludes Plaintiff's On-Call Claim..................20

i

POINT IV    PLAINTIFF'S WAGE NOTICE CLAIMS ARE PRECLUDED AS
            A MATTER OF LAW AND BY THE EVIDENTIARY RECORD.........23

       A.   Plaintiff's Annual Notice Claim is Precluded as a Matter of Law and
            Undisputed Fact ...........................................................................................23

       B.   Plaintiff's Paystub Claim is Precluded by the Undisputed
            Documentary Evidence ..............................................................................24

CONCLUSION.......................................................................................................................25

ii

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## CASES

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)........................................................... 7

*Anderson v. Mt. Clemens Pottery Co.*,
   328 U.S. 680, 66 S. Ct. 1187 (1946)............................................................................. 8, 15, 16

*Andryeyeva v. New York Health Care, Inc.*,
   45 Misc. 3d 820 (Sup. Ct. 2016)................................................................................................ 20

*Aneja v. Triborough Bridge & Tunnel Auth.*,
   35 F. App'x 19 (2d Cir. 2002)...................................................................................................... 7

*Augustyniak v. Lowe's Home Ctr., LLC*,
   102 F. Supp. 3d 479 (W.D.N.Y. 2015)...................................................................................... 10

*Barbato v. Knightsbridge Props.*,
   No. 14-cv-7043 (JS)(SIL), 2017 WL 9485716 (E.D.N.Y. Aug. 7, 2017) .................................. 7

*Byrnie v. Town of Cromwell, Bd. of Educ.*,
   243 F.3d 93 (2d Cir. 2001) .......................................................................................................... 7

*Cabrera v. Canela*,
   412 F. Supp. 3d 167 (E.D.N.Y. 2019) ...................................................................................... 24

*Calderon v. Mullarkey Realty, LLC*,
   No. 14-CV-2616 (PKC)(RLM), 2018 WL 2871834 (E.D.N.Y. June 10, 2018) ...................... 20

*Chao v. Gotham Registry, Inc.*,
   514 F.3d 280 (2d Cir. 2008) ................................................................................................. 8, 17

*Clarke v. JPMorgan Chase Bank, N.A.*,
   2010 WL 1379778 (S.D.N.Y. Mar. 26, 2010) ............................................................................ 9

*Daniels v. 1710 Realty LLC*,
   497 F. App'x 137 (2d Cir. 2012)......................................................................................... 17, 23

*Ellis v. Commonwealth Worldwide Chauffeured Transp. of NY, LLC*,
   No. 10-cv-1741 (DLI)(JO), 2012 WL 1004848 (E.D.N.Y. Mar. 23, 2012) ...................... 18, 19

*Eschmann v. White Plains Crane Serv.*,
   No. 11-cv-5881 (KAM)(VVP), 2014 WL 1224247 (E.D.N.Y. Mar. 24, 2014)......................... 8

iii

*Forrester v. Roth's I.G.A. Foodliner, Inc.*,
  646 F.2d 413 (9th Cir. 1981) .................................................................... 18, 19

*Garcia v. Saigon Mkt. LLC*,
  No. 15-CV-9433 (VSB), 2019 WL 4640260 (S.D.N.Y. Sep. 24, 2019) .................................. 10

*Gordon v. Kaleida Health*,
  299 F.R.D. 380 (W.D.N.Y. 2014).................................................................... 18

*Grochowski v. Phoenix Constr. Corp.*,
  318 F.3d 80 (2d Cir. 2003) ...................................................................... 8

*Gunawan v. Sake Sushi Rest.*,
  09-cv-5018 (ALC), 2011 WL 3841420 (E.D.N.Y. Aug. 26, 2011) ........................................ 11

*Gutierrez v. Tryax Realty Mgmt.*,
  17-cv-6752 (PAE), 2020 WL 777190 (S.D.N.Y. Feb. 18, 2020) ........................................ 8

*Hicks v. Baines*,
  593 F.3d 159 (2d Cir. 2010) ...................................................................... 8

*Hinterberger v. Catholic Health Sys.*,
  299 F.R.D. 22 (W.D.N.Y. 2014)................................................................ 18, 23

*Holzapfel v. Town of Newburgh*,
  145 F.3d 516 (2d Cir. 1998) ...................................................................... 17

*Kolesnikow v. Hudson Valley Hosp. Ctr.*,
  622 F. Supp. 2d 98 (S.D.N.Y. 2009) ............................................................... 19

*Kuebel v. Black & Decker Inc.*,
  643 F.3d 352 (2d Cir. 2011) ............................................................... 8, 16, 17

*Lee v. Kim*,
  No. 12-cv-316 (RER), 2013 WL 4522581, (E.D.N.Y Aug. 27, 2013) .................................... 14

*Marin v. Apple-Metro, Inc.*,
  No. 12cv-5274 (ENV)(CLP), 2017 WL 4950009 (E.D.N.Y. Oct. 4, 2017) ............................ 24

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574, 106 S. Ct. 1348 (1986)............................................................. 7

*Matteo v. Kohl's Dep't Stores, Inc.*,
  No. 09-cv-7830 (RJS) 2012 WL 760317, (S.D.N.Y. Mar. 6, 2012)..................................... 7

*McPherson v. N.Y.C. Dep't of Educ.*,
  457 F.3d 211 n.4 (2d Cir. 2006) ................................................................. 7

iv

*Mendez v. U.S. Nonwovens Corp.*,
　　No. 12-cv-5583 (ADS)(SIL), 2016 WL 1306551 (E.D.N.Y. Mar. 31, 2016) ......................... 18

*O'Donnell v. Jef Golf Corp.*,
　　2019 NY Slip Op 05040, ¶ 1, 173 A.D.3d 1528 (3d Dep't 2019) ............................................. 17

*Patraker v. Council on the Env't*,
　　No. 02-cv-7382 (LAK) 2003 WL 22703522 (S.D.N.Y. Nov. 17, 2003).................................. 12

*Pietri v. N.Y.S. Office of Court Admin.*,
　　936 F. Supp. 2d 120 (E.D.N.Y. 2013) ..................................................................................... 11

*Scott v. Harris*,
　　550 U.S. 372 (2007)................................................................................................................... 7

*Singh v. City of New York*,
　　524 F.3d 361 (2d Cir. 2008) .................................................................................................... 20

*Smith v. Am. President Lines, Ltd.*,
　　571 F.2d 102 (2d Cir. 1978) .................................................................................................... 12

*Tho Dinh Tran v. Alphonse Hotel Corp.*,
　　281 F.3d 23 (2d Cir. 2002) ...................................................................................................... 11

*Vega v. Trinity Realty Corp.*,
　　No. 14-cv-7417 (RJS)(KNF), 2015 WL 13203451 (S.D.N.Y. July 28, 2015) ........................ 20

**STATUTES**

12 NYCRR § 141 ............................................................................................................................ 13

12 NYCRR § 141-1.4 .................................................................................................................. 1, 14

12 NYCRR § 141-3 ........................................................................................................................ 14

12 NYCRR § 141-3.1 ..................................................................................................................... 13

12 NYCRR § 142-2.2 ....................................................................................................................... 1

12 NYCRR § 412-2.1(b) ............................................................................................................... 20

29 U.S.C. § 203(m) .......................................................................................................................... 3

29 U.S.C. § 207 ................................................................................................................................. 1

29 U.S.C. § 255(a) ............................................................................................................................ 9

Fair Labor Standards Act § 3(m) ..................................................................................................... 3

v

NYLL § 190 .................................................................................................................. 1

NYLL § 191 .................................................................................................................. 1

NYLL § 193 .................................................................................................................. 1

NYLL § 195 .............................................................................................................. 1, 24

NYLL § 195(3) ............................................................................................................ 24

NYLL § 195(4) ............................................................................................................ 25

NYLL § 195.1 ................................................................................................................ 3

NYLL § 198 ................................................................................................... 1, 9, 23, 25

NYLL § 198(1-b) ......................................................................................................... 24

NYLL § 650 .................................................................................................................. 1

Wage Theft Prevention Act, 2010 N.Y. LAWS 564 § 7 .............................................. 24

**RULES**

29 C.F.R. § 516.5 ........................................................................................................ 24

29 C.F.R. § 785.17 ...................................................................................................... 20

FRCP 56 ........................................................................................................................ 1

FRCP 56(c) .................................................................................................................... 6

## PRELIMINARY STATEMENT

This Memorandum of Law is respectfully submitted in support of Defendant Postgraduate Center for Mental Health's ("PCMH") Federal Rules of Civil Procedure ("FRCP") Rule 56 Motion for Summary Judgment seeking dismissal of plaintiff's Fair Labor Standards Act 29 U.S.C. § 207, *et seq.* ("FLSA"), New York Labor Law ("NYLL") §§ 190, 191, 193, 195, 198, and § 650 *et seq.,* and New York Codes, Rules and Regulations ("NYCRR") 12 NYCRR §§ 141-1.4, 142-2.2 claims.

Plaintiff, who from 2008 to June 2016 was the sole live in superintendent at PCMH's Columbia Street Residence – a supportive housing apartment building for formerly homeless individuals suffering from chronic mental illness – filed this wage and hour suit on February 13, 2019 alleging that PCMH failed to: pay him all regular and overtime wages and wage deductions; provide him with requisite labor notices and wage statements; display federal and state minimum wage/overtime posters; and, notify him of federal and state minimum wage and overtime rights.

It is respectfully submitted that discovery has concluded and the undisputed evidentiary record establishes that summary judgment as to all of plaintiff's claims is warranted now because:

1. The FLSA's two year statute of limitations renders plaintiff's federal claims time barred and plaintiff cannot establish any basis for a finding of willfulness such as to apply a three years limitations period, nor can plaintiff establish that equitable tolling applies.  Moreover, the NYLL's six year limitations period also renders any state law claims that accrued prior to June 6, 2013 time barred;

2. Plaintiff's NYLL overtime claim is precluded as a matter of law because as the sole, live-in superintendent at the Columbia Street Residence, plaintiff was an exempt residential janitor as a matter of law pursuant to the NYLL;

3. Plaintiff's overtime, on-call, and meal pay claims are barred by the evidentiary record which establishes that plaintiff was paid for all hours he worked, and was not engaged to be waiting, but, instead, waiting to be engaged; and

4. The undisputed evidentiary record establishes that plaintiff was regularly provided with pay notices as required by the NYLL and there is no private right of action under New York's then applicable annual wage notice statute, but, even if there

1

were, the undisputed record establishes that plaintiff acknowledged receipt of his 2012 and 2013 annual notices when the annual requirement was in place.

## FACTUAL BACKGROUND

PCMH is an owner and operator of 17 residential facilities for Supported Housing Residents, i.e., people with mental illness, chronic homelessness, and drug dependence; and, a provider of clinical, psychiatric and mental health services. *See* PCMH Rule 56.1 Statement, ¶ 3.

PCMH hired plaintiff Jose Perez as a building superintendent on or about June 25, 2008 and in October 2009 he accepted the sole live-in superintendent position at PCMH's then newly opened Columbia Street Residence, 177 Columbia Street, Brooklyn, New York ("Columbia Street"). In his capacity as the Columbia Street Residence's live-in superintendent plaintiff was responsible for the maintenance, cleaning, painting and repair of the physical environment of the building common areas and staff areas, except for resident apartments; responding to maintenance emergencies; and, supervising the work of several porters who assisted him during his regular shift, and who were scheduled to work when plaintiff was absent. *See id.*, at ¶ 16.

On his transfer to the Columbia Street Residence, plaintiff was informed by PCMH that his hours would be Sunday through Thursday, 8:00 a.m. to 4:00 p.m. – the same hours he worked at his previous work sites prior to his transfer – however, as the live-in Superintendent, plaintiff was required to be on-call after his regular hours, in that he was expected to be reachable for maintenance emergencies. *See id.*, at ¶ 19. At all other times, plaintiff was free to engage in personal activities after his shift ended at 4:00 p.m. each day, and he did so by, *inter alia:*

- Watching television in the evenings,
- Entertaining his siblings at his apartment every three months,
- Visiting realtors' offices on his days off,
- Entertaining overnight guests at least once or twice a week,
- Taking vacation time,
- Leaving for a cruise vacation,

2

- Maintaining a long-term romantic relationship with Catarina "Cathy" Marinara;
- Taking Ms. Marinara to restaurants,
- Consuming alcohol afterhours, and
- Leaving the Columbia Street Residence to consume alcohol at local Brooklyn bars.

*See id.*, at ¶ 43.

As the sole live-in superintendent at the Columbia Street Residence, plaintiff was paid approximately $16.48 per hour, plus he had use and occupancy of an onsite, one-bedroom 576 sq. ft. apartment so long as he remained employed. *See id.*, at ¶ 15. At all times relevant to this suit plaintiff was paid in excess of the minimum wage and PCMH at no point took a housing credit pursuant to § 3(m) of the Fair Labor Standards Act. *See* 29 U.S.C. 203(m). Moreover, throughout his tenure at the Columbia Street Residence, plaintiff earned at least $538.46 per week; in contrast, during the same time period the weekly minimum rate set by the then current New York Wage Order for the Building Services Industry was $308.35. *See* PCMH Rule 56.1 Statement, ¶ 28.

**The Evidentiary Record Establishes that Plaintiff Was Provided with Wage Notices**

Throughout his employment PCMH furnished plaintiff with biweekly pay records documenting the beginning and end date for each pay period covered by the earning statement; plaintiff's name and address; PCMH's name, address, and phone number; plaintiff's total gross pay, with rates of payment, the amount of hours worked, payment amount earned for the period, and his year-to-date payment amount; his tax, health insurance and other deductions; and, his net wages. *See id.*, at ¶¶ 31, 69. In 2012 and 2013, plaintiff acknowledged receipt of the annual Notice and Acknowledgment of Pay Rate and Payday Under Section 195.1 of the New York State Labor Law. *See id.*, at ¶¶ 22, 25. As plaintiff readily admitted at his deposition, he never reviewed any notice provided to him by PCMH, i.e., he signed the annual wage notice without reviewing it and he voluntarily elected never to review his biweekly earning statements although:

3

- He knew that the biweekly earning statements were available to him at the front desk of the Columbia Street Residence;

- PCMH did not deny access to his earning statements; and,

- He either chose not to retrieve them, or chose to retrieve them but never look at them.

*See id.*, at ¶ 32.

## <u>The Evidentiary Record Establishes that Plaintiff Was Paid Appropriately Consistent with PCMH's Established Wage & Hour Policies & Procedures</u>

The undisputed evidentiary record establishes that at all times relevant to this suit PCMH kept written policies in accordance with the FLSA and NYLL, *inter alia,* requiring: that employees clock in and out for all hours worked; the payment of regular and overtime wages; timely and accurate pay statements; that hours worked in excess of the normal 35-hour workweek must be approved by and reported to management; that non-exempt hourly employees be compensated for all hours worked in all circumstances, regardless of whether the time had been pre-approved; and that accurate employee wage and hour documentation be maintained. *See id.*, at ¶ 6.  Per these policies, PCMH's "work week" for calculating overtime was Sunday to Saturday.  *See id.*, at ¶ 7.

PCMH also publicly posted the employee rights and minimum wage posters required by the FLSA and the NYLL on a bulletin board in the fifth floor employee office, which plaintiff admits was an open office to which he had access and to which he entered. *See id.*, at ¶ 67.

PCMH also maintained established practices in accord with the FLSA and the NYLL, such as: all employees, including plaintiff, were required to clock in and out, and, log all hours worked; and if for any reason an employee did not clock in or out, they were to notify their supervisor, or call Human Resources directly to report the issue, the hours would then be logged, and the employee would be paid for the time.  *See id.*, at ¶ 9.   Consistent with these practices, plaintiff admits that if he forgot to clock out, or if he worked overtime, that he would notify the program

4

director of the time that he worked, that she would input the time for him, and that PCMH would

pay him for the time that he worked. *See id.*, at ¶ 38.

In addition to time records, payroll records, and wage statements, PCMH residences,

including Columbia Street are required to maintain logbooks and incident reports noting all visitors

and incidents, including police and fire department calls, and needed repairs. *See id.*, at ¶ 11.

Plaintiff's admissions, along with PCMH's logbooks and incident reports, and plaintiff's

wage statements, time records, and wage notices, establish that:

- Plaintiff's regular work schedule was Sunday through Thursday, 8:00 a.m. to 4:00 p.m. with a mandatory one hour lunch daily, resulting on average in a 35-hour workweek consistent with plaintiff's signed Transfer Confirmation Agreement and PCMH policy which defines "full time" as a 35 hour work week schedule;
- Plaintiff regularly took his lunch break, during which he would walk to a bodega several blocks away from the Columbia Street Residence, for lunch;
- Plaintiff knew to clock in when he was called into work outside of his regular hours, including when he was called into respond to a subordinate porter's call for assistance outside of his regularly scheduled shift and/or on his days off;
- Plaintiff was paid for all hours he worked, including regular pay for hours up to 40 in a work week and time and a half for hours in excess of 40 in a work week;
- In the event plaintiff failed to clock in, he simply notified his supervisor and she logged the time so that plaintiff was appropriately paid;
- Between February 15, 2013 and December 31, 2013, there were 23 work weeks where plaintiff worked in excess of 35 hours, including 10 weeks where he worked a total of 40 hours of overtime;
- In 2014, there were 20 work weeks where plaintiff worked in excess of 35 hours, including 7 weeks where he worked a total of 19 hours of overtime;
- In 2015, there were 25 work weeks where plaintiff worked in excess of 35 hours, including two weeks where he worked a total of three hours of overtime; and
- Between January 1, 2016 and his termination in June 2016, there were 13 work weeks where plaintiff worked in excess of 35 hours, however, none exceeded over 40 hours in a work week.

*See id.*, at ¶¶ 42, 45, 60.

Plaintiff concedes that:

5

- He has no document, notes, text messages, or any other communications or witness statements that would controvert PCMH's time records and earning statements.
- He cannot dispute the accuracy of his 2015 time records and earning statements;
- His 2016 earnings statements are accurate; and
- His 2016 time records are accurate.

*See id.*, at ¶¶ 39, 53.  When questioned about whether he had reason to believe that his 2016 wage statements and time records were inaccurate, plaintiff answered, "I believe they are accurate". *See id.*, at Ex. P for Perez Dep. 220:23-221:2.

**Plaintiff's Termination and Subsequent Legal Action:**

On May 30, 2016 at approximately 8:00 p.m., plaintiff returned to the Columbia Street Residence after having been out; he was visibly intoxicated.  While at the front desk, on his way to his apartment, plaintiff became involved in a public verbal altercation with a resident. *See id.*, at ¶ 43.  During the altercation plaintiff directed profanity and a rude gesture at the resident. Plaintiff was suspended without pay pending an investigation and on June 6, 2016 he was terminated for his conduct toward the resident. *See id.*, at ¶ 48.

Plaintiff did not file the instant complaint until February 15, 2019, approximately 2 years and 8 months after his termination, although he retained counsel to assist him with pursuing unemployment benefits two months after his termination from PCMH. *See id.*, at ¶¶ 63, 65.

## STANDARD OF REVIEW

It is well settled that a motion for summary judgment should be granted if there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(c) (summary judgment should be granted where, as here, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law").  While the burden initially is on the moving party to demonstrate the absence of any material fact in dispute, the non-moving party may not rely upon purely

6

conclusory or contradictory allegations to defeat the motion; rather the non-movant must produce specific facts sufficient to establish the presence of a genuine factual issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Scott v. Harris*, 550 U.S. 372, 381 (2007) (where opposing parties tell two different stories, one of which is blatantly contradicted by the record so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment); *Aneja v. Triborough Bridge & Tunnel Auth.*, 35 F. App'x 19, 21 (2d Cir. 2002) ("district court must grant summary judgment if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law"); *Matteo v. Kohl's Dep't Stores, Inc.*, No. 09-cv-7830 (RJS) 2012 WL 760317, at **7 (S.D.N.Y. Mar. 6, 2012) (while a Court "cannot make credibility determinations in deciding a motion for summary judgment, [the Court] need not credit assertions that are wholly contradicted by [the]… evidence in the record").

The party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts", and must produce supporting evidence or facts in opposition to the motion sufficient to raise a material question of fact. *See Barbato v. Knightsbridge Props.*, No. 14-cv-7043 (JS)(SIL), 2017 WL 9485716, at *3 (E.D.N.Y. Aug. 7, 2017) (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986)). Mere conclusory assertions and unsubstantiated allegations by the opposing party are insufficient to defeat a motion for summary judgment. *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment"); *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir. 2001)

7

(Even where facts are disputed, in order to defeat summary judgment, the nonmoving party must "offer enough evidence to enable a reasonable jury to return a verdict in its favor"); *Gutierrez v. Tryax Realty Mgmt.*, 17-cv-6752 (PAE), 2020 WL 777190, at *3 (S.D.N.Y. Feb. 18, 2020) ("A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment") (*citing Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010)); *Eschmann v. White Plains Crane Serv.*, No. 11-cv-5881 (KAM)(VVP), 2014 WL 1224247, at *3 (E.D.N.Y. Mar. 24, 2014).

To establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S. Ct. 1187, 1192 (1946); *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 287 (2d Cir. 2008); *Grochowski v. Phoenix Constr. Corp.*, 318 F.3d 80, 87 (2d Cir. 2003). The burden falls to plaintiff to produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. *Anderson*, 328 U.S. at 687. Only after plaintiff has met his burden does the burden shift to defendant to "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *See id.*; *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011).

It is respectfully submitted that the evidentiary record before this Court warrants dismissal of Plaintiff's claims now. The record is clear: Plaintiff's unpaid wages, overtime, and on-call allegations are not supported by any evidence and are instead directly refuted by, *inter alia*, PCMH's documentary evidence establishing complete and timely payment of plaintiff's wages, maintenance of all appropriate employee records, conspicuous posting of employee wage and hour rights, and Plaintiff's own testimony confirming the accuracy of plaintiff's wage statements and

8

time records, and rebutting that PCMH had actual or constructive knowledge of any alleged uncompensated hours. Further, the evidentiary record directly refutes any allegation that PCMH willfully violated the FLSA or engaged in any deception warranting equitable tolling.

It is respectfully submitted that the undisputed evidentiary records establishes that summary dismissal of all of plaintiff's claims is warranted now.

## ARGUMENT

### POINT I
### PLAINTIFF'S CLAIMS ARE TIME-BARRED AND THE EVIDENTIARY RECORD PRECLUDES THE APPLICATION OF EQUITABLE TOLLING

Plaintiff's employment at PCMH was terminated on June 6, 2016 and he filed his present Complaint on February 15, 2019. Defendant respectfully submits that under the FLSA's two year statute of limitations all of plaintiff's federal claims are time-barred and should be dismissed now. *See* 29 U.S.C. § 255(a) (causes of action "may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued"). Even were Plaintiff able to establish willfulness, which he cannot, any of his federal claims accruing prior to February 15, 2016, would nonetheless be time-barred. Similarly, Plaintiff's New York State Labor Law claims accruing prior to February 15, 2013 are time barred per New York's six year statute of limitations for wage and hour claims.  *See* N.Y. Lab. Law § 198 (setting six year statute).

**A. The FLSA'S Two Year Limitations Period Applies Because the Evidentiary Record Precludes Plaintiff from Establishing Willfulness**

PCMH respectfully submits that there is no basis to apply the FLSA's three year statute of limitations because the evidentiary record establishes that PCMH did not knowingly or recklessly engage in FLSA violations. *See  Clarke v. JPMorgan Chase Bank, N.A.*, 2010 WL 1379778, at *10

(S.D.N.Y. Mar. 26, 2010) ("[A]n employer does not willfully violate the FLSA even if it acted 'unreasonably, but not recklessly, in determining its legal obligation'") (citations omitted). PCMH maintained appropriate time records, policies, and practices regarding the payment of overtime as discussed above and, as a result there is no basis to establish willfulness, even at summary judgment. *Garcia v. Saigon Mkt. LLC*, No. 15-CV-9433 (VSB), 2019 WL 4640260, at *12 (S.D.N.Y. Sep. 24, 2019) (where the court dismissed plaintiffs' equitable estoppel claim at summary judgment stating "no reasonable jury would find that Defendants' FLSA violations were willful" where defendant maintained comprehensive employment records even though it did not provide adequate wage notices and did not correctly calculate wages); *Augustyniak v. Lowe's Home Ctr., LLC*, 102 F. Supp. 3d 479, 486 (W.D.N.Y. 2015) (after completion of discovery, the court applied the two year statute where plaintiff failed to establish bad faith or willfulness).

PCMH publicly and properly posted Employee Rights Under the Fair Labor Standards Act, NYLL Minimum Wage Poster and other notice of employee rights pursuant to the FLSA and New York Labor Law on a bulletin board in the fifth floor employee office, which plaintiff admits was an open office that he entered and to which he periodically escorted PCMH residents to meet the program director. *See* PCMH Rule 56.1 Statement at ¶ 67. PCMH regularly furnished plaintiff with biweekly earning statements, available to plaintiff at the Columbia Street Residence front desk, which plaintiff admits he elected not to look at or examine and maintained written policies in accordance with the FLSA and NYLL for, *inter alia*, the payment of regular and overtime wages; that hours worked that exceed the normal 35-hour workweek must be approved by and reported to management; and that it would compensate non-exempt hourly employees for all hours that they worked in all circumstances. *See id.*, at ¶ 70.

None of PCMH's actions or conduct constitute willful violations of federal or state labor

10

laws conduct to deceive plaintiff in regard to his rights under federal and state labor laws.

**B. Plaintiff Cannot Establish His Entitlement to Equitable Tolling or Demonstrate Willfulness**

The evidentiary record amassed through discovery establishes that Plaintiff is not entitled to equitable tolling to extend the statutory period in the instant action. Equitable tolling is unavailable in the absence of an employer's deceit, and plaintiff cannot demonstrate that he was the victim of fraud or other conduct designed to conceal the existence of his wage claim. *Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 36-37 (2d Cir. 2002) (equitable tolling denied); *Pietri v. N.Y.S. Office of Court Admin.*, 936 F. Supp. 2d 120, 138 (E.D.N.Y. 2013) (no equitable tolling where plaintiff failed to establish defendants misled him); *Gunawan v. Sake Sushi Rest.*, 09-cv-5018 (ALC), 2011 WL 3841420, at *3 (E.D.N.Y. Aug. 26, 2011) (noting that failure to give an FLSA notice "is insufficiently extraordinary [for purpose of equitable tolling] in the absence of some sort of deception") (internal quotations omitted).

To the contrary, the evidentiary record establishes that PCMH provided Plaintiff with all necessary information of his rights and employee protections under federal and state law. PCMH, *inter alia*:

- Conspicuously posted Employee Rights Under the Fair Labor Standards Act, an NYLL Minimum Wage Poster and other FLSA and NYLL notices of employee rights on a bulletin board in the fifth floor employee office, which plaintiff admits was an open office that he entered and to which he periodically escorted PCMH residents to meet the program director. *See* PCMH Rule 56.1 Statement at ¶ 67.

- Notified plaintiff (and plaintiff acknowledged receipt of) two New York Wage Theft Prevention Act ("WTPA") wage notices for 2012 and 2013 which included information of his regular and overtime rates of pay, and the frequency of his pay. *See id.*, at ¶ 68.

- Regularly furnished plaintiff with biweekly earning statements available to him at the Columbia Street Residence front desk, which plaintiff admits he elected not to look at or examine. *See id.*, at ¶ 69.

- Maintained appropriate written policies in accordance with the FLSA and NYLL for,

11

*inter alia*, the payment of regular and overtime wages; approval and reporting procedures for hours worked that exceed the normal 35-hour workweek; and compensation to employees for all hours that they worked in all circumstances. *See id.*, at ¶ 70.

Plaintiff further availed himself of the aforementioned PCMH policies when he admitted that he would notify his supervisor if he worked overtime, that she would record the time for him, and that he would be paid for the time that he worked. *See id.*, at ¶ 71.

Equitable tolling is also unavailable where a plaintiff's own actions demonstrate a lack of due diligence in pursuing his alleged claims. *See Smith v. Am. President Lines, Ltd.*, 571 F.2d 102, 109-10 (2d Cir. 1978) (tolling inappropriate, despite failure to post notice of rights under Title VII, where plaintiff retained attorney during limitations period and thus "had access to a means of acquiring knowledge of his rights"); *Patraker v. Council on the Env't*, No. 02-cv-7382 (LAK) 2003 WL 22703522, at *2 (S.D.N.Y. Nov. 17, 2003) (an employer's alleged failure to post the required notice became immaterial after plaintiff retained an attorney, and plaintiff "cannot hide behind the allegedly limited scope of his retainer of the attorney for the simple reason that the limitation of the scope reflects his own lack of due diligence").

The evidentiary record demonstrates Plaintiff lacked due diligence in pursuit of his wage and hour claims:

- Plaintiff testified, under oath, that as early as 2016, prior to his termination, he "got hip" and believed that he was not compensated properly. *See* PCMH Rule 56.1 Statement at ¶ 64.
- In approximately August 2016, plaintiff retained V. Jonas Urba, Esq. of the Urba Law Firm to assist him and pursue unemployment benefits in regard to his employment tenure at PCMH. *See id.*, at ¶ 65.
- Plaintiff voluntarily elected never to review the payroll notices which PCMH made available to him, including his WTPA notice and bi-monthly pay stubs. *See id.*, at ¶ 66.
- Plaintiff admitted that he was not denied access to his earning statements. When

12

specifically asked whether he was denied access to his earning statements, plaintiff replied, "No, I wasn't". *See id.*, at ¶ 32.

- Plaintiff has no affirmative belief that his 2015 time records and wage statements are inaccurate. *See id.*, at ¶ 39.

- Plaintiff admits that his 2016 wage statements and time records are accurate. *See id.*, at ¶ 40.

Plaintiff's lack of due diligence in pursuit of his wage claims precludes the availability of equitable estoppel in the instant action.

## POINT II
## THE UNDISPUTED EVIDENTIARY RECORD ESTABLISHES THAT PLAINTIFF'S NEW YORK STATE OVERTIME CLAIMS FAIL BECAUSE HE WAS AN EXEMPT "RESIDENTIAL JANITOR"

Plaintiff is precluded from asserting an overtime claim under the New York Labor Law because the undisputed record establishes that PCMH is subject to New York's Minimum Wage Order for the Building Services Industry and that plaintiff meets the Minimum Wage Order's definition of an exempt "residential janitor."   It is undisputed that PCMH is the operator of residential facilities for Supported Housing residents, people with mental illness, chronic homelessness, and drug dependence.   Indeed, PCMH's function as the owner and operator of residential facilities for people with mental illness is established in its charter. These undisputed facts render PCMH subject to the New York Minimum Wage Order for the Building Service Industry ("Wage Order"), because it is an "establishment engaged in whole or in part in renting, servicing, cleaning, maintaining, selling, or managing buildings or building space". *See* 12 NYCRR § 141-3.1.   The Wage Order sets the minimum wage requirements in New York for employees who perform the work of, *inter alia*, a live-in superintendent of a building and provides that live-in superintendents are exempt from New York's overtime requirements. *See* 12 NYCRR § 141, *et seq.*

13

Moreover, the evidentiary record, including plaintiff's own deposition testimony, establishes that Plaintiff was the sole live-in superintendent at the Columbia Street Residence and therefore exempt under the Minimum Wage Order. *See* PCMH Rule 56.1 Statement at ¶ 15. The Minimum Wage Order exempts an employee performing the duties of a "residential janitor" from its overtime requirements. A residential janitor is defined as: "a person employed to render any physical service in connection with the maintenance, care or operation of a residential building" and who "resides in the building where he or she renders service." *See* 12 NYCRR § 141-3; *Lee v. Kim*, No. 12-cv-316 (RER), 2013 WL 4522581, (E.D.N.Y Aug. 27, 2013) (superintendents are "janitors" where they perform maintenance services and are the only resident employees). A live-in superintendent is <u>not</u> entitled to overtime pay under the NYLL. *See* 12 NYCRR § 141-1.4 ("employer shall pay an employee, <u>except a janitor in a residential building for overtime</u> at a wage rate of 1 ½ times the . . . regular rate for hours . . . in excess of 40 . . . in a work week") (emphasis added).

The undisputed record establishes that plaintiff was exempt from New York's overtime requirements and renders his New York overtime claims subject to summary judgment dismissal now.

### POINT III
### PLAINTIFF'S WAGE, OVERTIME, ON CALL, AND MEAL BREAK CLAIMS ARE PRECLUDED BY THE UNDISPUTED EVIDENTIARY RECORD

In the event that plaintiff establishes his entitlement to an extended limitations period, which he cannot, plaintiff's wage, overtime, on-call, and meal break claims nonetheless fail because the undisputed evidentiary record precludes plaintiff from establishing that he actually worked any hours (on-call hours or otherwise) that he did not get paid for. As plaintiff readily concedes, he has no documents or notes, text messages or communications, or witness statements

14

that would controvert PCMH's time records and earning statements, which establish that the overtime hours that plaintiff was already compensated for are the only overtime hours that plaintiff actually worked. *See* PCMH Rule 56.1 Statement at ¶ 53.

### A. The Documentary Evidence and Plaintiff's Own Admissions Preclude Plaintiff's Wage and Overtime Claims

It is respectfully submitted that the undisputed evidentiary record, including PCMH's payroll records and plaintiff's own admissions, establish that plaintiff was appropriately paid for each and every time he worked, that his time records and wage statements are accurate, and therefore preclude plaintiff from establishing that he was required to work off the clock. *See Anderson*, 328 U.S. 680 at 687 ("When the employer has kept proper and accurate records, the employee may easily discharge his burden by securing the production of those records").

PCMH produced over 230 pages of plaintiff's time records and earning statements that demonstrate, *inter alia*, PCMH complied with recordkeeping standards pursuant to the FLSA and the NYLL; plaintiff worked on average a 35-hour workweek consistent with the Transfer Confirmation Agreement plaintiff signed and consistent with PCMH policy which defines a fulltime employee as one who is scheduled to work 35 hours per week; plaintiff regularly clocked in if he worked overtime hours or hours outside of his regular schedule; and, in the event he forgot to clock in, plaintiff was nonetheless paid for all hours worked because he notified his supervisor who would log the time. *See* Defendant's Rule 56.1 Statement, ¶ 61.

Plaintiff's claims are also fatally undermined by his under oath deposition testimony wherein he concedes that his 2015 and 2016 time records and earning statements are accurate and that he has no supportive documentation or witness to controvert PCMH's time records and earning statements. This concession vitiates any FLSA claim which accrued during the FLSA period. *See* Defendant's Rule 56.1 Statement, ¶ 53. PCMH's records are indisputably accurate as

15

plaintiff confirms, and plaintiff is unable to use these records to meet his burden of "proving that he performed work for which he was not properly compensated." *See Anderson*, 328 U.S. 680 at 687.

Moreover, plaintiff's allegations that he worked on-call hours and was told to clock out at 4:00 p.m. but continue to work until 6:00 p.m. are not only untrue, but, they are also fatally undermined by PCMH's undisputed records which establish, *inter alia*, that:

- From February 15, 2013 – the New York Labor Law statute of limitations date – to December 31, 2013 there were 45 instances in which plaintiff clocked out late, or clocked in to perform work after his regular shift concluded or on his days off. Plaintiff was paid for each and every one of those instances at his regular rate for hours between 35 and 40, and at the overtime rate for hours in excess of 40 in the work week;

- In 2014, there were 50 instances in which plaintiff clocked out late, or clocked in to perform work after his regular shift concluded or on his days off. Plaintiff was paid for each and every one of those instances at his regular rate for hours between 35 and 40, and at the overtime rate for hours in excess of 40 in the work week;

- In 2015, there were 54 instances in which plaintiff clocked out late, or clocked in to perform work after his regular shift concluded or on his days off. Plaintiff was paid for each and every one of those instances at his regular rate for hours between 35 and 40, and at the overtime rate for hours in excess of 40 in the work week; and

- In 2016, there were 20 instances in which plaintiff clocked out late, or clocked in to perform work after his regular shift concluded or on his days off. Plaintiff was paid for each and every one of those instances at his regular rate for hours between 35 and 40 and never worked in excess of 40 hours in a work week during that period.

*See* Defendant's Rule 56.1 Statement at ¶ 42; *see also Kuebel*, 643 F.3d at 363 (holding that an issue of fact is created where time sheets showed only one instance of overtime over nine-month period and plaintiff alleged that he was forbidden from accurately recording overtime work on his time sheets.)

Plaintiff has proffered nothing more than his unsupported allegation that he was told to clock out at 4:00 p.m. and continue to work until 6:00 p.m. Discovery has concluded, plaintiff has been provided with and had access to all of his time and payroll records, and, plaintiff admits –

16

10828803v.8

under oath – that his time and payroll records for 2015 and 2016 are accurate.  Moreover, the undisputed evidentiary record establishes that plaintiff routinely worked on the clock after 4:00 pm.  *See, e.g.,* Defendant's Rule 56.1 Statement at ¶ 42(d) ("In 2016, there were 20 instances over 13 work weeks in which plaintiff clocked out late, or clocked in to perform work outside of his regular shift or on his days off").  This fact, fatally undermines any claim that plaintiff was required to clock out at 4 and yet continue to work without pay.  Defendant respectfully submits that in light of the undisputed evidentiary record, plaintiff's allegation fails to meet even the most lenient of standards.  *See, e.g*., *Kuebel*, 643 F.3d.

### B. Plaintiff Cannot Establish PCMH had Actual or Constructive Knowledge of Alleged Additional Work Performed.

This evidentiary record also precludes plaintiff from demonstrating that he actually performed any unrecorded work, overtime, or meal time work of which PCMH had actual or constructive knowledge, the *sine qua non* of determining overtime liability. *See Daniels v. 1710 Realty LLC*, 497 F. App'x 137 (2d Cir. 2012) ("It is only 'once an employer knows or has reason to know that an employee is working overtime' that the employer 'cannot deny compensation simply because the employee failed to properly record or claim his overtime hours'"); *Kuebel*, 643 F.3d at 363 ("To establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work"); *Chao*, 514 F.3d at 287 ("It is clear an employer's actual or imputed knowledge that an employee is working is a necessary condition to finding the employer suffers or permits that work*"); O'Donnell v. Jef Golf Corp.*, 2019 NY Slip Op 05040, ¶ 1, 173 A.D.3d 1528 (3d Dep't 2019) ("employee has the burden of proving that he or she performed work for which he or she was not properly compensated"); *see also Holzapfel v. Town of Newburgh*, 145 F.3d 516, 524 (2d Cir. 1998) (holding that an employee is not working

17

for the employer's benefit if the employer has no knowledge of it); *Hinterberger v. Catholic Health Sys.*, 299 F.R.D. 22, 45 (W.D.N.Y. 2014); *Gordon v. Kaleida Health*, 299 F.R.D. 380, 396 (W.D.N.Y. 2014).

PCMH's reasonable reporting procedures establish that PCMH could not have had actual or constructive knowledge of plaintiff's alleged work during meal breaks or alleged additional overtime work as a matter of law because plaintiff knew of PCMH's policies and procedures and consistently utilized them. *See Mendez v. U.S. Nonwovens Corp.*, No. 12-cv-5583 (ADS)(SIL), 2016 WL 1306551, at *6 (E.D.N.Y. Mar. 31, 2016) ("the existence of a policy of mandatory meal breaks with an automatic pay deduction for the break time "by itself, does not violate the FLSA"); *Ellis v. Commonwealth Worldwide Chauffeured Transp. of NY, LLC*, No. 10-cv-1741 (DLI)(JO), 2012 WL 1004848, at *9 (E.D.N.Y. Mar. 23, 2012) ("Plaintiff has not pointed to any evidence in the record that Defendants violated their written policies and declined to pay Plaintiff when he told his supervisor that he could not take a meal break"); *Hinterberger*, 299 F.R.D. at 45 ("Several Circuit Courts … expressly declined to place the onus on employers to ferret out work that is not reported under its reasonable procedures"); *Gordon*, 299 F.R.D. at 396 (*citing Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981) in which the Ninth Circuit affirmed grant of summary judgment to employer where store employee was required to report overtime on time sheets, was paid for all hours he reported, and did not raise material issue of fact as to employer's knowledge).

PCMH's logbook further demonstrates that plaintiff's regular workday ended at 4:00 p.m., not 6:00 p.m., and that plaintiff would clock in again when he had to return to work, for example:

- On Sunday March 13, 2016 at 4:20 p.m., twenty minutes after he clocked out and his regular shift ended, plaintiff was contacted, but did not answer, a call from PCMH staff to attend to a washing machine that malfunctioned and caused a flood in the laundry room. Plaintiff still had not responded by 5:58 p.m. when a tenant notified PCMH staff that a light

18

was out and water was still on the floor in the laundry room. Plaintiff received no discipline for his absence; and,

- On Monday March 28, 2016 plaintiff clocked out at 3:57 p.m. and then clocked back in at 4:52 p.m. to attend to a vendor who appeared at the premises to fix a window. Plaintiff clocked out again at 5:10 p.m. after attending to the vendor, and was paid for half-an-hour of work, which fatally undermines his allegation that his supervisors allegedly told him to clock out at 4:00 p.m. and work until 6:00 p.m.

*See* Defendant's Rule 56.1 Statement at ¶ 50.

In light of the evidentiary record, there can be no genuine issue of fact as to the accuracy of the PCMH's payroll records or plaintiff's adherence to PCMH's reasonably reporting procedures and policies. *See Ellis*, 2012 WL 1004848, at *9; *Gordon*, 299 F.R.D. at 396; *Forrester*, 646 F.2d at 414; *Kolesnikow v. Hudson Valley Hosp. Ctr.*, 622 F. Supp. 2d 98, 118-19 (S.D.N.Y. 2009) (plaintiff's testimony that she worked an unspecified amount of time over forty hours, that she "sometimes" worked through her half-hour lunch break, and that she worked an unspecified amount of time past the end of her shift two or more times a week failed to provide a sufficient basis to infer that she worked more than forty hours in any given week).

As plaintiff concedes: he knew that in order for PCMH to track his hours he would need to clock in and clock out via the electronic timekeeping system and he availed himself of PCMH's reasonable reporting procedures when he did not, i.e., he admits that in the event he did not clock in/out, he would tell his director, she would record the time for him in PCMH's time keeping system, and he was paid for the time that he worked. *See* Defendant's Rule 56.1 Statement, ¶ 71. At his deposition plaintiff provided the following answers to the following questions:

Q.      When you -- I'm sorry. I don't understand. When you forgot to punch out?

A.      Yeah, there was times when I was in my job and into my work and I forget to punch out.

Q.      And what happened then?

A.      My director would put the time in for me.

Q.      You would get pay . . . for that time?

19

A.      Yes. The director would put the time in for me. Yeah.

Q.      So when you failed to punch out, you got paid for that time?

A.      If the director put the time in, yes. If I didn't -- if she didn't put the time, if she didn't put the time in for me there was no way I was going get paid.

Q.      How did she know?

A.      I would tell her listen I came out and I worked a little overtime and she would put it in for me.

*See* Defendants' Rule 56.1 Statement, Ex. P Perez Dep. 192:4-25.

### C.  The Evidentiary Record Precludes Plaintiff's On-Call Claim

The evidentiary record is clear:  plaintiff is not entitled to any compensation during any hours he was "on call," even if he was expected to be reachable for emergencies because the evidentiary record – including his own admissions - establishes that he was free to leave the premises and engage in personal activities after hours. *See* 29 C.F.R. § 785.17 (on-call employee not required to remain on employer's premises and free to engage in personal activities while on call is not entitled to compensation for those hours); 12 NYCRR §412-2.1(b) ("an employee shall not be deemed to be permitted to work or required to be available for work…..at any time when he or she is free to leave the place of employment."); *Singh v. City of New York*, 524 F.3d 361 (2d Cir. 2008) (employees may only seek compensation for time spent "on-call" where their employer restricts their ability to use time freely for their own benefit); *Calderon v. Mullarkey Realty, LLC*, No. 14-CV-2616 (PKC)(RLM), 2018 WL 2871834, at *17 (E.D.N.Y. June 10, 2018) ("The NYLL incorporate[s] FLSA standards for determining whether time worked is compensable time"); *Andryeyeva v. New York Health Care, Inc.*, 45 Misc. 3d 820 (Sup. Ct. 2016) (it is well settled that on-call time is only compensable where an employer restricts the employee's ability to use time freely for the employee's benefit); *see also Vega v. Trinity Realty Corp.*, No. 14-cv-7417 (RJS)(KNF), 2015 WL 13203451, at *6 (S.D.N.Y. July 28, 2015) (plaintiff's on-call claim denied

where "absent any evidence in support of a conclusory assertion that [plaintiff] was on call 24 hours per day, seven days per week, the Court cannot conclude that [plaintiff] was on call 24 hours per day, seven days per week, awaiting work assignments for the benefit of the defendants").

Defendant respectfully submits that plaintiff's conclusory allegation that he was engaged to be waiting, seven days a week fails because the evidentiary record establishes that plaintiff indisputably engaged in normal private pursuits and personal activities after his shift ended at 4:00 p.m. each regular work day, and he did so by, *inter alia*:

- Watching television in the evenings;
- Entertaining his siblings at his apartment every three months;
- Visiting realtors' offices on his days off;
- Entertaining overnight guests at least once or twice a week;
- Taking vacation time;
- Going on cruises;
- Maintaining a long-term romantic relationship with Catarina "Cathy" Marinara and taking her to restaurants;
- Consuming alcohol afterhours; and
- Leaving the Columbia Street Residence to consume alcohol at local Brooklyn bars.

*See* PCMH Rule 56.1 Statement at ¶ 43.

Notable to his on-call claims, PCMH never disciplined plaintiff for his personal consumption of alcohol or his decision to leave the premises and frequent local bars after his regularly scheduled shift. PCMH counseled plaintiff that *public* intoxication at a facility with Supported Housing residents undergoing mental health treatment was not acceptable, yet plaintiff was party to two drunken, verbal altercations in a public space at the Columbia Street Residence, and was terminated only after verbally assaulting and making rude gestures toward a resident.

Furthermore, the Columbia Street Residence log book, incident reports and plaintiff's time records also demonstrate that plaintiff was free to engage in personal activities after his regularly scheduled shift and that he clocked in and clocked out each time he was on duty regardless of the

21

assignment. Examples include, *inter alia*:

- On Thursday March 10, 2016, plaintiff clocked in and out from 10:00 a.m. to 10:55 a.m. while on vacation and was paid for one hour of work for assisting a New York City Marshall with a tenant eviction;

- On Sunday March 13, 2016 at 4:20 p.m., twenty minutes after he clocked out and his regular shift ended, plaintiff was contacted, but did not answer, a call from PCMH staff to attend to a washing machine that malfunctioned and caused a flood in the laundry room. Plaintiff still had not responded by 5:58 p.m. when a tenant notified PCMH staff that a light was out and water was still on the floor in the laundry room. plaintiff received no discipline for his absence;

- On Friday March 18, 2016, a regular day off, plaintiff clocked in at 9:24 a.m. and clocked out at 10:31 a.m. and was paid for one hour of work for assisting the program director with an emergency in a resident's apartment;

- As discussed above, on Monday March 28, 2016 plaintiff clocked out at 3:57 p.m. and then clocked back in at 4:52 p.m. to attend to a vendor who appeared at the premises to fix a window. Plaintiff clocked out again at 5:10 p.m. after attending to the vendor, and was paid for half-an-hour of work;

- On Sunday April 3, 2016, at 1:21 a.m. PCMH staff left a note in a log book entry for plaintiff to receive later that morning at the beginning of his 8:00 a.m. shift requesting that he wash the blinds in the program directors office located on the fifth floor. Plaintiff was not required to attend to the assignment at the time the request was made as plaintiff was scheduled to work, did work and was paid for his regular shift on Sunday April 3, 2016;

- On Friday May 20, 2016, plaintiff's regular day off, Edna Sams left a note for plaintiff in the log book for plaintiff to receive on his next working day, Sunday May 22, 2016, to ensure that the lights in an apartment were turned off prior to a tenant's move-in scheduled for Monday May 23, 2016. This note did not require plaintiff to attend to the assignment at the time the request was made, as plaintiff was scheduled to work, did work and was paid for his regular shift on Sunday May 22, 2016 and Monday May 23, 2016; and,

- On Saturday May 21, 2016, PCMH staff left a note in a log book entry for plaintiff to receive on his next working day, Sunday May 22, 2016, to check a hole in the ceiling in the main office located on the fifth floor. This note did not require plaintiff to attend to the assignment at the time the request was made, as plaintiff was scheduled to work, and did work and was paid for his regular shift on Sunday May 22, 2016.

*See* PCMH Rule 56.1 Statement at ¶ 50.

Moreover, the evidentiary record establishes that plaintiff's assertion that he regularly

responded to after-hours emergencies is wrong. Columbia Street Residence incident report records

establish that only six emergency incidents occurred at Columbia Street during the FLSA statutory period, February 15, 2016 through plaintiff's June 6, 2016 termination.  Of those six, plaintiff only worked on one incident and that one incident occurred <u>during</u> plaintiff's regular 8:00 a.m. to 4:00 p.m. shift on Thursday April 27, 2016, when he accompanied a resident in need of medical assistance to the Program Director's fifth floor office. *See* PCMH Rule 56.1 Statement at ¶ 52.

PCMH did not restrict or hinder plaintiff for using his time off freely, and as a result plaintiff is not entitled to any additional compensation for time on-call. Plaintiff's overtime allegations are demonstrably false, and PCMH was not required to "ferret out" alleged, additional work hours that plaintiff failed to report, as a matter of law. *See Hinterberger*, 299 F.R.D. at 45; *Daniels v. 1710 Realty LLC*, 10-cv-0022 (RER), 2011 WL 3648245, *6 (E.D.N.Y. Aug. 17, 2011) ("Given that the Building had no regular operating hours and was literally 'open' 24 hours, 7 days per week, [plaintiff] cannot meet the just and reasonable inference standard merely by testifying that he worked "X" number of hours per week. More must be shown.")

**POINT IV**
**PLAINTIFF'S WAGE NOTICE CLAIMS ARE PRECLUDED AS A MATTER OF LAW AND BY THE EVIDENTIARY RECORD**

Plaintiff's claim that he is owed damages because he was not provided with appropriate New York annual wage notices and pay stubs is simply wrong.  Plaintiff's annual notice claim fails as a matter of law because there is no private right of action for such a claim and even if there was, the evidentiary record establishes that plaintiff acknowledged receipt of his annual wage notices in 2012 and 2013.  Plaintiff's pay stub claim is equally deficient in that the evidentiary record establishes that plaintiff was provided with bi-weekly paystubs which included all of the necessary information.  *See* N.Y. Lab. Law § 198; *see* PCMH Rule 56.1 Statement at ¶¶ 34, 36.

**A.  Plaintiff's Annual Notice Claim is Precluded as a Matter of Law and Undisputed Fact**

23

The NYLL Wage Theft Prevention Act has <u>never</u> provided a private right of action for violations of its annual notice requirements – it <u>only</u> provides a right of action for failure to provide a proper wage notice <u>upon hiring</u>. *See* N.Y. Lab. Law § 198(1-b) (originally enacted as part of the Wage Theft Prevention Act, 2010 N.Y. LAWS 564, § 7); *Cabrera v. Canela*, 412 F. Supp. 3d 167, 185 (E.D.N.Y. 2019) ("the WTPA did not provide for damages for annual wage notice violations during the time that the annual notice requirement was in effect"). PCMH hired plaintiff on June 25, 2008, three years prior to the WTPA's April 9, 2011 effective date, and as such cannot be liable for not providing plaintiff with new employee notice.

Moreover, Plaintiff's annual notice claim is further vitiated by plaintiff's under oath admission and the documentary evidence which establishes that he signed an acknowledgment of receipt for his annual notices in 2012 and 2013, two of the three years in which the annual notice requirement was in place. *See* PCMH Rule 56.1 Statement at ¶¶ 22, 25; N.Y. Lab. Law § 195; *Marin v. Apple-Metro, Inc.*, No. 12cv-5274 (ENV)(CLP), 2017 WL 4950009, at *34 (E.D.N.Y. Oct. 4, 2017) ("provided that the notice was given and the employee acknowledged receipt, the extent to which the employee did or did not understand the contents of the notice is not material"); N.Y. Lab. Law § 198(1-b) (originally enacted as part of the Wage Theft Prevention Act, 2010 N.Y. LAWS 564, § 7).

### B.  Plaintiff's Paystub Claim is Precluded by the Undisputed Documentary Evidence

The documentary evidence establishes that: PCMH furnished plaintiff with wage statements on each payroll date; those wage statements included all requisite NYLL information; and, PCMH maintained and preserved payroll records along with the time records. *See* PCMH Rule 56.1 Statement at ¶ 31; 29 C.F.R. § 516.5 ("Each employer shall preserve for at least three years: (a) Payroll records …"); N.Y. Lab. Law § 195(3) (employers must "furnish each employee

24

with a statement with every payment of wages…"); N.Y. Lab. Law § 195(4) (employers must "establish, maintain and preserve for not less than six years contemporaneous, true, and accurate payroll records…").

Moreover, the documentary evidence also establishes that PCMH made complete and timely payment of plaintiff's wages, an affirmative defense to NYLL wage notice and wage statement violations, and, as plaintiff conceded, under oath, his 2015 and 2016 time records and earning statements, and that those records are accurate. *See* N.Y. Lab. Law § 198. *See* PCMH Rule 56.1 Statement at ¶ 39. Plaintiff's WTPA-based NYLL claims must be dismissed.

## CONCLUSION

For the foregoing reasons, PCMH respectfully requests that their Rule 56 motion be granted in its entirety, that each of plaintiff's remaining causes of action be dismissed, and that the Court grant such other and further relief as the Court deems just and proper.

Dated:      New York, New York
            July 27, 2020

                                    YOURS, etc.,

                                    WILSON, ELSER, MOSKOWITZ,
                                    EDELMAN & DICKER LLP

                              By: _____
                                    Celena R. Mayo
                                    Josef K. Mensah
                                    Attorneys for Defendants
                                    150 East 42nd Street
                                    New York, New York 10017
                                    Ph: (212) 490-3000
                                    Fx: (212) 490-3038

25

10828803v.8