UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

JOSE PEREZ,

                            Plaintiff,

           - against -

POSTGRADUATE CENTER FOR MENTAL
HEALTH,

                       Defendant.

-------------------------------------------------------------------x

Case No.: 19-cv-00931 (EK)(PK)


**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**


RESPECTFULLY SUBMITTED,

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
Attorneys for Defendants
150 East 42nd Street
New York, New York 10017-5639
(212) 490-3000
File No.: 01593.01592


COUNSEL:     CELENA R. MAYO
                 JOSEF K. MENSAH

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................1

RELEVANT PROCEDURAL HISTORY ....................................................................2

FACTUAL BACKGROUND .......................................................................................3

STANDARD OF REVIEW ..........................................................................................8

ARGUMENT ...............................................................................................................10

      POINT I      THE COURT SHOULD DISREGARD PLAINTIFF'S COUNSEL'S DECLARATION ..............................................10

      POINT II      PLAINTIFF'S CLAIMS ARE TIME-BARRED AND THE EVIDENTIARY RECORD PRECLUDES THE APPLICATION OF EQUITABLE TOLLING.....................................11

            A.      The FLSA'S Two Year Limitations Period Applies.....................12

            B.      Plaintiff Cannot Establish His Entitlement to Equitable Tolling............................................................13

      POINT III      PLAINTIFF'S NEW YORK STATE OVERTIME CLAIMS FAIL BECAUSE HE WAS AN EXEMPT "RESIDENTIAL JANITOR" .........15

      POINT IV      PLAINTIFF'S WAGE, OVERTIME, ON CALL, AND MEAL BREAK CLAIMS ARE PRECLUDED BY THE UNDISPUTED EVIDENTIARY RECORD ..................................16

            A.      The Evidence and Plaintiff's Own Admissions Preclude His Wage/Overtime Claims.....................................16

            B.      Plaintiff Cannot Establish PCMH had Knowledge of His Alleged Additional Work............................19

            C.      The Evidentiary Record Precludes Plaintiff's On-Call Claim ........................................................21

            D.      Plaintiff is Not Entitled to Overtime Wages Inclusive of the Value of His Apartment ..............................23

      POINT IV      PLAINTIFF'S WAGE NOTICE CLAIMS ARE PRECLUDED AS A MATTER OF LAW ..............................24

CONCLUSION.............................................................................................................25

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ........................................................................ 8, 9, 17

*Andryeyeva v. New York Health Care, Inc.*,
   45 Misc. 3d 820 (Sup. Ct. 2016) ...................................................... 22

*Augustyniak v. Lowe's Home Ctr., LLC*,
   102 F. Supp. 3d 479 (W.D.N.Y. 2015) ............................................. 12

*Barbato v. Knightsbridge Props.*,
   No. 14-cv-7043 (JS)(SIL), 2017 WL 9485716 (E.D.N.Y. Aug. 7, 2017) ................................. 8

*Cabrera v. Canela*,
   412 F. Supp. 3d 167 (E.D.N.Y. 2019) ............................................... 11, 24

*Calderon v. Mullarkey Realty, LLC*,
   No. 14-CV-2616 (PKC)(RLM), 2018 WL 2871834 (E.D.N.Y. June 10, 2018) .................... 21

*Chao v. Gotham Registry, Inc.*,
   514 F.3d 280 (2d Cir. 2008) ............................................................. 9, 19

*Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*,
   3 F. Supp. 3d 171 (S.D.N.Y. 2014) ................................................... 9

*Clarke v. JPMorgan Chase Bank, N.A.*,
   2010 WL 1379778 (S.D.N.Y. Mar. 26, 2010) .................................... 12

*Curran v. Aetna Life Ins. Co.*,
   No. 13-cv-00289 (NSR), 2016 WL 3843085 (S.D.N.Y. July 11, 2016) ................................. 11

*Daniels v. 1710 Realty LLC*,
   497 F. App'x 137 (2d Cir. 2012) ...................................................... 19, 23

*Ellis v. Commonwealth Worldwide Chauffeured Transp. of NY, LLC*,
   No. 10-cv-1741 (DLI)(JO), 2012 WL 1004848 (E.D.N.Y. Mar. 23, 2012) ...................... 20, 21

*ExteNet Sys., Inc. v. Village of Pelham*,
   377 F. Supp. 3d 217 (S.D.N.Y. 2019) ............................................... 9

*Forrester v. Roth's I.G.A. Foodliner, Inc.*,
   646 F.2d 413 (9th Cir. 1981) ........................................................... 20, 21

*Garcia v. Saigon Mkt. LLC*,
    No. 15-CV-9433 (VSB), 2019 WL 4640260 (S.D.N.Y. Sep. 24, 2019) ........................... 12, 23

*Gordon v. Kaleida Health*,
    299 F.R.D. 380 (W.D.N.Y. 2014) ................................................................................... 19, 20, 21

*Grochowski v. Phoenix Constr. Corp.*,
    318 F.3d 80 (2d Cir. 2003) ........................................................................................................ 9

*Herman v. RSR Sec. Servs. Ltd.*,
    172 F.3d 132 (2d Cir. 1999) .................................................................................................... 12

*Hinterberger v. Catholic Health Sys.*,
    299 F.R.D. 22 (W.D.N.Y. 2014) ............................................................................. 19, 20, 23

*Holzapfel v. Town of Newburgh*,
    145 F.3d 516 (2d Cir. 1998) .................................................................................................... 19

*Jeffreys v. City of New York*,
    426 F.3d 549 (2d Cir. 2005) ...................................................................................................... 8

*Knight v. U.S. Fire Ins. Co.*,
    804 F.2d 9 (2d Cir. 1986) .......................................................................................................... 9

*Kolesnikow v. Hudson Valley Hosp. Ctr.*,
    622 F. Supp. 2d 98 (S.D.N.Y. 2009) ...................................................................................... 21

*Koljenovic v. Marx*,
    999 F. Supp. 2d 396 (E.D.N.Y. 2014) ............................................................................... 16, 23

*Kuebel v. Black & Decker Inc.*,
    643 F.3d 352 (2d Cir. 2011) ......................................................................................... 9, 18, 19

*Lee v. Kim*,
    No. 12-cv-316 (RER), 2013 WL 4522581, (E.D.N.Y Aug. 27, 2013) .................................... 16

*Marin v. Apple-Metro, Inc.*,
    No. 12cv-5274 (ENV)(CLP), 2017 WL 4950009 (E.D.N.Y. Oct. 4, 2017) ........................... 24

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ................................................................................................................... 8

*Mendez v. U.S. Nonwovens Corp.*,
    No. 12-cv-5583 (ADS)(SIL), 2016 WL 1306551 (E.D.N.Y. Mar. 31, 2016) ........................ 20

*O'Donnell v. Jef Golf Corp.*,
    2019 NY Slip Op 05040, 173 A.D.3d 1528 (3d Dep't 2019) ................................................. 19

iii

*Padilla v. Manlapaz,*
  643 F. Supp. 2d 302 (E.D.N.Y. 2009) ............................................................ 17

*Parada v. Banco Indus. de Venez., C.A.,*
  753 F.3d 62 (2d Cir. 2014) ............................................................... 12, 14

*Patraker v. Council on the Env't,*
  No. 02-cv-7382 (LAK) 2003 WL 22703522 (S.D.N.Y. Nov. 17, 2003) .................. 14

*Singh v. City of New York,*
  524 F.3d 361 (2d Cir. 2008) .................................................................. 21

*Smith v. Am. President Lines, Ltd.,*
  571 F.2d 102 (2d Cir. 1978) .................................................................. 14

*Valdez v. United States,*
  518 F.3d 173 (2d Cir. 2008) .................................................................. 14

*Vega v. Trinity Realty Corp.,*
  No. 14-cv-7417 (RJS)(KNF), 2015 WL 13203451 (S.D.N.Y. July 28, 2015) ........ 22

*Veltri v. Bldg. Serv. 32b-J Pension Fund,*
  393 F.3d 318 (2d Cir. 2004) .................................................................. 14

*Zaldivar v. JMJ Caterers, Inc.,*
  166 F. Supp. 3d 310 (E.D.N.Y. 2016) ........................................................ 11

**STATUTES**

12 NYCRR § 141-1.4 ............................................................... 1, 16, 23

12 NYCRR § 141-3 .................................................................. 16

12 NYCRR § 141-3.1 ............................................................... 15

12 NYCRR § 142-2.212 ............................................................ 1

12 NYCRR § 412-2.1(b) ........................................................... 21

2010 N.Y. LAWS 564 § 7 ........................................................ 24, 25

29 C.F.R. § 516.5 ................................................................ 25

29 C.F.R. § 785.17 ............................................................... 21

29 C.F.R. § 785.23 ............................................................... 21

29 C.F.R. § 825.500 .............................................................. 11

11045861v.5

29 U.S.C. § 207 ................................................................................................................ 1

29 U.S.C. § 255(a) ........................................................................................................... 11

29 U.S.C. 203(m) ........................................................................................................ 5, 23

New York Labor Law § 190 .............................................................................................. 1

New York Labor Law § 191 .............................................................................................. 1

New York Labor Law § 193 .............................................................................................. 1

New York Labor Law § 195 ..................................................................................... 1, 11, 24

New York Labor Law § 195(3) ........................................................................................ 25

New York Labor Law § 195(4) ........................................................................................ 25

New York Labor Law § 195.1 ............................................................................................ 5

New York Labor Law § 198 ..................................................................................... 1, 11, 25

New York Labor Law § 198(1-b) ................................................................................ 24, 25

New York Labor Law § 198(1-d) ..................................................................................... 24

New York Labor Law § 650 .............................................................................................. 1

**RULES**

Federal Rules of Civil Procedure 56 ................................................................................. 1

Federal Rules of Civil Procedure 56(c) ............................................................................. 8

## PRELIMINARY STATEMENT

Defendant Postgraduate Center for Mental Health ("PCMH") respectfully submits this Memorandum of Law in opposition to Plaintiff Jose Perez's Federal Rules of Civil Procedure ("FRCP") Rule 56 Motion for Summary Judgment seeking dismissal of PCMH's defenses to and an award of judgment based on plaintiff's Fair Labor Standards Act 29 U.S.C. § 207, *et seq.* ("FLSA"), New York Labor Law ("NYLL") §§ 190, 191, 193, 195, 198, and § 650 *et seq.,* and New York Codes, Rules and Regulations ("NYCRR") 12 NYCRR §§ 141-1.4, 142-2.2 claims.

Plaintiff, who from 2008 to June 2016 was the sole live in superintendent at PCMH's Columbia Street Residence – a supportive housing apartment building for formerly homeless individuals suffering from chronic mental illness – filed this wage and hour suit on February 15, 2019 alleging that PCMH failed to: pay him all regular and overtime wages and wage deductions; provide him with requisite labor notices and wage statements; display federal and state minimum wage/overtime posters; and, notify him of federal and state minimum wage and overtime rights.

It is respectfully submitted that discovery has concluded and the undisputed evidentiary record establishes that plaintiff's prayer for relief on this motion for summary judgment cannot be granted now[1] because:

1.  The evidentiary record precludes plaintiff from establishing any basis for a finding of willfulness such as to apply a three years limitations period as a matter of law, nor can plaintiff establish that equitable tolling applies as a matter of law. Moreover, the FLSA's two year statute of limitations renders plaintiff's federal claims time barred and the NYLL's six year limitations period renders any state law claims that accrued prior to February 15, 2013 time barred;

---

[1] The undisputed evidentiary record also establishes that summary judgment on defendant's behalf as to all of plaintiff's claims is warranted for the reasons referenced in PCMH's own FRCP Rule 56 Motion for Summary Judgment. *See* ECF No. 38-41.

2.      The evidentiary record precludes Plaintiff from establishing his NYLL overtime claims as a matter of law because as the sole, live-in superintendent at the Columbia Street Residence, plaintiff was an exempt residential janitor pursuant to the NYLL;

3.      Even assuming plaintiff is entitled to the application of a three-year statute of limitations for his FLSA claim, which he is not, the evidentiary record precludes plaintiff from establishing that he is entitled to any alleged overtime, on-call, or meal pay such as to warrant summary judgment on his FLSA claims, because the evidentiary record establishes that plaintiff was paid for all hours he worked, and was not engaged to be waiting, but, instead, waiting to be engaged; and

4.      The undisputed evidentiary record precludes plaintiff from establishing his New York State Wage Theft Prevention Act ("WTPA") and NYLL notice claims because plaintiff was regularly provided with accurate wage statements as required by the NYLL, there is no private right of action under New York's then applicable annual wage notice statute, but, even if there were, the undisputed record establishes that plaintiff acknowledged receipt of his 2012 and 2013 annual notices when the annual requirement was in place and PCMH made complete and timely payments of wages to plaintiff, an affirmative defense.

## RELEVANT PROCEDURAL HISTORY

Plaintiff filed his complaint on February 15, 2019 against an incorrect and defunct corporation that he referred to as Postgraduate Center Columbia Street Residence, Inc. On August 9, 2019, a conference was held before Honorable Carol Bagley Amon, United States District Judge, in which the parties agreed that (1) plaintiff would amend his complaint to substitute in and reflect the proper entity, PCMH; (2) the Clerk of Court would remove the defunct entity from the caption; and, (3) defense counsel would accept service of the amended complaint and would not contest the statute of limitations from the date plaintiff filed the original complaint. *See* Defendant's Rule 56.1 Counterstatement of Facts ("DCOF") ¶ Def. 94.

Plaintiff filed his Amended Complaint on August 15, 2019 (ECF No. 13) and PCMH ultimately filed its Amended Answer to the Amended Complaint on August 28, 2019 (ECF No. 25). Pursuant to the Scheduling Order, the deadline for the completion of fact discovery was February 28, 2020. (ECF No. 22). The deadline for the parties to serve their responses to discovery demands was December 12, 2019. While PCMH served its responses to plaintiff's discovery

demands, plaintiff failed to do so by the deadline. On January 13, 2020, PCMH moved to compel plaintiff's responses to its discovery demands, after plaintiff failed to respond for one month, failed to request more time to respond and failed to appear for plaintiff's deposition on the notice date, December 17, 2019. *See* Mayo Decl. ¶ 9; ECF No. 26. The Court granted PCMH's motion and ordered plaintiff to respond to defendant's discovery demands by January 28, 2020, and appear for his deposition, which was held on February 7, 2020. (ECF Dkt. Order Entered January 22, 2020). Defendant's corporate deposition of Director of Human Resources Danielle Hunter, and nonparty deposition of PCMH Regional Director for Residential Services Edna Sams were held on February 19 and February 20, respectively – notably, although each witness was scheduled for an entire day, Plaintiff instead elected to question Ms. Sams and Ms. Hunter for approximately one hour each. *See* Mayo Decl. ¶ 11; DCOF at ¶ Def. 100. Pursuant to its continuing obligations to supplement its disclosures in discovery, PCMH served supplemental responses to Plaintiff's First Demand for Documents and Things on February 26, 2020 which included an opportunity for plaintiff to inspect PCMH's logbook records and copies of all PCMH's incident reports, which are not work orders as plaintiff's counsel refers to them. *See* Mayo Decl. ¶ 12; DCOF Ex. "QQ" Hassan Decl. ¶ 42.

Plaintiff did not: avail himself of the opportunity to inspect PCMH's logbook records; nor to review PCMH's incident reports; nor did he request additional time to do so; nor did he contest defendant's production or seek the court's intervention prior to the February 28, 2020 discovery deadline.  Moreover, Plaintiff did not raise this, or any discovery issue regarding defendant's production at the March 13, 2020 discovery status conference before the Honorable Peggy Kuo, Magistrate Judge. (*See* ECF Dkt. Minute Entry Entered March 13, 2020).

## **FACTUAL BACKGROUND**

PCMH is an owner and operator of 17 residential facilities for Supported Housing Residents, i.e., people with mental illness, chronic homelessness, and drug dependence; and a

provider of clinical, psychiatric and mental health services. *See* DCOF, ¶ 77.

PCMH hired plaintiff Jose Perez as a building superintendent on or about June 25, 2008 and in October 2009 he accepted the sole live-in superintendent position at PCMH's then newly opened Columbia Street Residence, 177 Columbia Street, Brooklyn, New York ("Columbia Street"). In his capacity as the Columbia Street Residence's live-in superintendent plaintiff was responsible for the maintenance, cleaning, painting and repair of the physical environment of the building common areas and staff areas, except for resident apartments; responding to maintenance emergencies; and, supervising the work of several porters who assisted him during his regular shift, and who were scheduled to work when plaintiff was absent. *See id.*, at ¶ 78.

On his transfer to the Columbia Street Residence, plaintiff was informed by PCMH that his hours would be Sunday through Thursday, 8:00 a.m. to 4:00 p.m. – the same hours he worked at his previous work sites prior to his transfer. As the live-in Superintendent, plaintiff was required to be on-call after his regular hours, in that he was expected to be reachable for maintenance emergencies. *See id.*, at ¶ 35. At all other times, plaintiff was free to engage in personal activities after his shift ended at 4:00 p.m. each day, and he did so by, *inter alia*, (1) watching television in the evenings, (2) entertaining his siblings at his apartment every three months, (3) visiting realtors' offices on his days off, (4) entertaining overnight guests at least once or twice a week, (5) taking vacation time, (6) leaving for a cruise vacation, (7) maintaining a long-term romantic relationship with Catarina "Cathy" Marinara, (8) taking Ms. Marinara to restaurants, (9) consuming alcohol afterhours, and (10) leaving Columbia Street to consume alcohol at local bars. *See id.*, at ¶ 46.

As the sole live-in superintendent at the Columbia Street Residence, plaintiff was paid approximately $16.48 per hour, plus he had use and occupancy of an onsite, one-bedroom 576 sq. ft. apartment so long as he remained employed. *See id.*, at ¶ 20. At all times relevant to this suit plaintiff was paid in excess of the minimum wage and PCMH at no point took a housing credit

pursuant to § 3(m) of the FLSA. *See* 29 U.S.C. 203(m). Moreover, throughout his tenure at the Columbia Street Residence, plaintiff earned at least $538.46 per week; in contrast, during the same time period the weekly minimum rate set by the then current New York Wage Order for the Building Services Industry was $308.35. *See* DCOF at ¶ 75.

## The Evidentiary Record Establishes that Plaintiff Was Provided with Wage Notices

Throughout his employment PCMH furnished plaintiff with biweekly pay records documenting the beginning and end date for each pay period covered by the earning statement; plaintiff's name and address; PCMH's name, address, and phone number; plaintiff's total gross pay, with rates of payment, the amount of hours worked, payment amount earned for the period, and his year-to-date payment amount; his tax, health insurance and other deductions; and, his net wages. *See id.*, at Exs. "G" – "L". In 2012 and 2013, plaintiff acknowledged receipt of the annual Notice and Acknowledgment of Pay Rate and Payday Under Section 195.1 of the NYLL and received notice of any changes in pay in his wage statements. *See id.*, at Exs. "E" – "F". As plaintiff readily admitted at his deposition, he never reviewed any notices provided to him by PCMH, i.e., he signed the annual wage notice without reviewing it and he voluntarily elected never to review his biweekly earning statements although:

- He knew that the biweekly earning statements were available to him at the front desk of the Columbia Street Residence;
- PCMH did not deny access to his earning statements; and,
- He either chose not to retrieve them, or chose to retrieve them but never look at them.

*See id.*, at ¶ 63.

## Plaintiff Was Paid Appropriately Consistent with PCMH's Wage & Hour Policies

The undisputed evidentiary record establishes that at all times relevant to this suit PCMH kept written policies in accordance with the FLSA and NYLL, *inter alia,* requiring: that employees

5

clock in and out for all hours worked; the payment of regular and overtime wages; timely and accurate pay statements; that hours worked in excess of the normal 35-hour workweek must be approved by and reported to management; that non-exempt hourly employees be compensated for all hours worked in all circumstances, regardless of whether the time had been pre-approved; and that accurate employee wage and hour documentation be maintained. *See id.*, at ¶ 71. Per these policies, PCMH's "work week" for calculating overtime was Sunday to Saturday. *See id.*

PCMH also publicly posted the employee rights and minimum wage posters required by the FLSA and the NYLL on a bulletin board in the fifth floor employee office, which plaintiff admits was an open office to which he had access and to which he entered and cleaned. *See id.*, at ¶¶ 69-70. PCMH also maintained established practices in accord with the FLSA and the NYLL, such as: all employees, including plaintiff, were required to clock in and out, and, log all hours worked; and if for any reason an employee did not clock in or out, they were to notify their supervisor, or call Human Resources directly to report the issue, the hours would then be logged, and the employee would be paid for the time. *See* Hunter Opp. Dec. ¶ 20. Consistent with these practices, plaintiff admits that if he forgot to clock out, or if he worked overtime, that he would notify the program director of the time that he worked, that she would input the time for him, and that PCMH would pay him for the time that he worked. *See* DCOF ¶ 48. PCMH residences, including Columbia Street are also required to maintain log books and incident reports noting all visitors and incidents, including police and fire department calls, and needed repairs. *See id.*, at ¶¶ 55, Def. 106.

Plaintiff's admissions, along with PCMH's log books and incident reports, and plaintiff's wage statements, time records, and wage notices, establish that:

- Plaintiff's regular work schedule was Sunday through Thursday, 8:00 a.m. to 4:00 p.m. with a mandatory one hour lunch daily, resulting on average in a 35-hour workweek

6

consistent with plaintiff's signed Transfer Confirmation Agreement and PCMH policy which defines "full time" as a 35 hour work week schedule;

- Plaintiff regularly took his lunch break, during which he would walk to a bodega several blocks away from the Columbia Street Residence, for lunch;

- Plaintiff knew to clock in when he was called into work outside of his regular hours, including when he was called into respond to a subordinate porter's call for assistance outside of his regularly scheduled shift and/or on his days off;

- Plaintiff was paid for all hours he worked, including regular pay for hours up to 40 in a work week and time and a half for hours in excess of 40 in a work week;

- In the event plaintiff failed to clock in, he simply notified his supervisor and she logged the time so that plaintiff was appropriately paid;

- Between February 15, 2013 and December 31, 2013, there were 23 work weeks where plaintiff worked in excess of 35 hours, including 10 weeks where he worked a total of 40 hours of overtime;

- In 2014, there were 20 work weeks where plaintiff worked in excess of 35 hours, including 7 weeks where he worked a total of 19 hours of overtime;

- In 2015, there were 25 work weeks where plaintiff worked in excess of 35 hours, including two weeks where he worked a total of three hours of overtime; and

- Between January 1, 2016 and his termination in June 2016, there were 13 work weeks where plaintiff worked in excess of 35 hours, however, none exceeded over 40 hours in a work week.

*See id.*, at ¶¶ 35. Plaintiff concedes that (1) he has no document, notes, text messages, or any other communications or witness statements that would controvert PCMH's time records and earning statements; (2) he cannot dispute the accuracy of his 2015 time records and earning statements; and, (3) his 2016 earnings statements and time records are accurate. S*ee id.*, at ¶ 46, Ex. "P" for Perez Dep. 220:23-221:2.

**Plaintiff's Termination and Subsequent Legal Action:**

On May 30, 2016 at approximately 8:00 p.m., plaintiff returned to the Columbia Street Residence after having been out; he was visibly intoxicated. While at the front desk, on his way to his apartment, plaintiff became involved in a public verbal altercation with a resident. *See id.*, at ¶ 43. During the altercation plaintiff directed profanity and a rude gesture at the resident. Plaintiff was suspended without pay pending an investigation and on June 6, 2016 he was terminated for his conduct toward the resident. *See id.*, at ¶ Def. 105. Plaintiff did not file the instant complaint until February 15, 2019, approximately 2 years and 8 months after his termination, although he retained counsel to assist him with pursuing unemployment benefits two months after his termination from PCMH. *See id.*, at ¶ 73. Plaintiff filed an amended complaint on August 15, 2019, which did not include any meal break or apparent "sleep time" causes of action.

## STANDARD OF REVIEW

A motion for summary judgment should be granted only if there is no genuine issue of material fact. *See* FRCP 56(c) (summary judgment should be granted only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law"). On the instant motion, the burden is initially on the plaintiff to demonstrate the absence of any material fact in dispute; and when factual issues arise, the Court must resolve all factual ambiguities and draw all reasonable inferences in favor of the defendant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).

Notably, the non-moving party need not prove their case dispositively and must only produce supporting evidence or facts in opposition to the motion sufficient to raise a material question of fact. *See Barbato v. Knightsbridge Props.*, No. 14-cv-7043 (JS)(SIL), 2017 WL 9485716, at *3 (E.D.N.Y. Aug. 7, 2017) (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986)); *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986). Typically, "[o]n cross-motions for summary judgment, the court must consider each motion independently of the other and when evaluating each, the court must consider the facts in the light most favorable to the non-moving party"; however, where "the motion and cross-motion seek a determination of the same issues, the Court may consider them together." *ExteNet Sys., Inc. v. Village of Pelham*, 377 F. Supp. 3d 217, 223 (S.D.N.Y. 2019); *see also Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 3 F. Supp. 3d 171, 179 (S.D.N.Y. 2014) (considering cross motions for partial summary judgment together where parties moved on issue of defendant's limitation of liability defense because the motions presented "two sides of the same coin").

To establish liability under the FLSA on a claim for unpaid overtime, it is plaintiff's burden to prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S. Ct. 1187, 1192 (1946); *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 287 (2d Cir. 2008); *Grochowski v. Phoenix Constr. Corp.*, 318 F.3d 80, 87 (2d Cir. 2003). Plaintiff must produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. *See Anderson*, 328 U.S. at 687. Only after plaintiff has met his burden does the burden shift to defendant to "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *See id.*; *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011).

It is respectfully submitted that the evidentiary record before this Court warrants denial of plaintiff's summary judgment motion. The record is clear: Plaintiff's unpaid wages, overtime, and on-call allegations are not supported by any evidence and are instead directly refuted by, *inter alia*, PCMH's documentary evidence establishing complete and timely payment of plaintiff's wages, maintenance of all appropriate employee records, conspicuous posting of employee wage and hour

9

rights, and Plaintiff's own testimony confirming the accuracy of plaintiff's wage statements and time records, and rebutting that PCMH had actual or constructive knowledge of any alleged uncompensated hours. Further, the evidentiary record directly refutes any allegation that PCMH willfully violated the FLSA or engaged in any deception warranting equitable tolling.

## ARGUMENT

### POINT I
### THE COURT SHOULD DISREGARD PLAINTIFF'S COUNSEL'S DECLARATION

Plaintiff includes with his motion papers a declaration from his attorney in which counsel, *inter alia*, makes baseless, improper factual allegations and legal arguments unsupported by the evidentiary record and which  amount to speculation at best. Plaintiff's counsel, *inter alia*:

- Refers to his Exhibit 4 as an "employment agreement" between the parties, when plaintiff was an employee at will and the document is conspicuously entitled and executed by his client as a "Lease Agreement – Live In Superintendent". *See* Hassan Decl. ¶ 14;

- Regarding plaintiff's apparent objection to defendant's provision of time sheets and earning statements from the February 15, 2013 to June 6, 2016 statutory period and defendant's production of incident report records prior to the end of discovery, (which he erroneously refers to as "work orders"), counsel attempts to use his own negligence and failure to obtain further discovery as a sword and a shield. Plaintiff's counsel refused to seek the Court's intervention to obtain discovery he felt plaintiff was entitled to by the February 28, 2020 close of discovery and the parties' March 13, 2020 discovery status conference with Magistrate Judge Kuo. *See id.,* at ¶¶ 21, 36-37, 39, 42;

- Alleges that incident reports at his Exhibit 11 demonstrate Plaintiff worked beyond his regular shift, yet does not cite to the evidentiary record, including his client's deposition or declaration. The evidentiary record, including his client's deposition and declaration, are bereft of support for his misguided allegation; and counsel fails to explain how the incident reports support his allegation. *See id.,* at ¶¶ 21, 39-40;

- Alleges that his Exhibit 15 is a memo instructing plaintiff that he could not consume certain beverages, whereas Plaintiff testified at his deposition that he regularly left Columbia Street to drink at Brooklyn bars, and the memo states plaintiff was disciplined for having a belligerent, public argument with his girlfriend in the Columbia Street lobby. *See id.,* at ¶ 15; DCOF, ¶ 53, Ex. "P" Perez Dep. 52:4-14;

- Erroneously inflates plaintiff's hourly and overtime wage rates with the value of an apartment not located in a Supported Housing residence, even though PCMH's expert

opined that the fair market rental value specifically to plaintiff's superintendent unit is $0.00; and; does not cite to any legal authority to undercut PCMH's expert's opinion, as a matter of law. *See* Hassan Decl. ¶ 24, 31, 41; DCOF, ¶ 28;

- Alleges that defendant did not produce a wage notice in September 2015 when plaintiff received a pay increase (Hassan Decl. ¶ 35), however does not cite to any legal authority that a wage notice was required. Indeed, wage notices are not required if a change in pay is reflected in the attendant wage statements. *See* NYLL § 195 (providing that changes to pay information reflected on the wage statement constitutes notice). Furthermore, there is no private action one has to alleged violations of NYLL § 195(2). *See Cabrera v. Canela*, 412 F. Supp. 3d 167, 185 (E.D.N.Y. 2019); and,

- Alleges defendant refused to produce wage and time records for a period prior to February 2013, though PCMH was only required to maintain up to three years of Plaintiff's wage records under the FLSA and up to six years under the NYLL, and plaintiff initially filed his complaint on February 15, 2019. *See* 29 C.F.R. § 825.500; NYLL §195.

Defendant respectfully submits that plaintiff's counsel's entire declaration should be disregarded. *See Zaldivar v. JMJ Caterers, Inc.*, 166 F. Supp. 3d 310, 319 n.3 (E.D.N.Y. 2016) (holding that the court will not consider any legal arguments contained in attorney declarations because inclusion of legal arguments in declarations is improper); *Curran v. Aetna Life Ins. Co.*, No. 13-cv-00289 (NSR), 2016 WL 3843085, at *8 (S.D.N.Y. July 11, 2016) (same).

## POINT II
## PLAINTIFF'S CLAIMS ARE TIME-BARRED AND THE EVIDENTIARY RECORD PRECLUDES THE APPLICATION OF EQUITABLE TOLLING

Plaintiff's employment at PCMH was terminated on June 6, 2016 and he filed his present Complaint on February 15, 2019. Defendant respectfully submits that under the FLSA's two year statute of limitations all of plaintiff's federal claims are time-barred and summary judgment cannot be granted in plaintiff's favor. *See* 29 U.S.C. § 255(a) (Setting two year statute of limitations). Even were Plaintiff able to establish willfulness, which he cannot, any of his federal claims accruing prior to February 15, 2016, would nonetheless be time-barred. Similarly, Plaintiff's NYLL claims accruing prior to February 15, 2013 are time barred per New York's six year statute of limitations for wage and hour claims. *See* NYLL § 198 (setting six year statute of limitations).

11045861v.5

**A. The FLSA'S Two Year Limitations Period Applies**

PCMH respectfully submits that there is no basis to apply the FLSA's three year statute of limitations because the evidentiary record establishes that PCMH did not knowingly or recklessly engage in FLSA violations. *See Clarke v. JPMorgan Chase Bank, N.A.*, 2010 WL 1379778, at *10 (S.D.N.Y. Mar. 26, 2010) ("[A]n employer does not willfully violate the FLSA even if it acted 'unreasonably, but not recklessly, in determining its legal obligation'") (citations omitted); *Parada v. Banco Indus. de Venez., C.A.*, 753 F.3d 62, 71 (2d Cir. 2014) citing *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 141 (2d Cir. 1999) ("plaintiff bears the burden of proof" on the issue of willfulness for statute of limitations purposes). PCMH maintained appropriate time records, policies, and practices regarding the payment of overtime as discussed above and, as a result there is no basis to establish willfulness, even at summary judgment. *Garcia v. Saigon Mkt. LLC*, No. 15-CV-9433 (VSB), 2019 WL 4640260, at *12 (S.D.N.Y. Sep. 24, 2019) (where the court dismissed plaintiffs' equitable tolling claim at summary judgment stating "no reasonable jury would find that Defendants' FLSA violations were willful" where defendant maintained comprehensive employment records even though it did not provide adequate wage notices and did not correctly calculate wages); *Augustyniak v. Lowe's Home Ctr., LLC*, 102 F. Supp. 3d 479, 486 (W.D.N.Y. 2015) (after completion of discovery, the court applied the two year statute where plaintiff failed to establish bad faith or willfulness).

PCMH publicly and properly posted Employee Rights Under the FLSA, NYLL Minimum Wage Poster and other notice of employee rights pursuant to the FLSA and NYLL on a bulletin board in the fifth floor employee office, which plaintiff admits was an open office that he entered, cleaned and maintained, and to which he escorted a PCMH resident to meet the program director. *See* DCOF ¶ 69. PCMH regularly furnished plaintiff with biweekly earning statements, available to plaintiff at the Columbia Street Residence front desk, which plaintiff admits he elected not to

look at or examine and PCMH maintained written policies in accordance with the FLSA and NYLL for, *inter alia*, the payment of regular and overtime wages; that hours worked that exceed the normal 35-hour workweek must be approved by and reported to management; and that it would compensate non-exempt hourly employees for all hours that they worked in all circumstances. *See id.*, at ¶ 57.

Discovery has concluded and plaintiff can no longer rely on unsupported allegations – instead he is required to come forward with proof of his claims.  It is clear that plaintiff has not done so.  Plaintiff's allegation that incident reports demonstrate that plaintiff worked outside of his regular shift is incorrect and plaintiff does not cite to anything in the evidentiary record for his erroneous assumption. Indeed, PCMH front desk staff are responsible to fill out an NYC Department of Homeless Services Incident Report when resident incidents and emergencies occur at the premises pursuant to NYC Department of Homeless Services reporting guidelines and internal incident follow-up documentation; and, must record, *inter alia*, the persons involved in the incident. *See id.*, at ¶ 55. Plaintiff failed to include the only incident report in which plaintiff was involved and that Plaintiff attended to. S*ee id.* Furthermore, the incident occurred during plaintiff's regular 8:00 a.m. to 4:00 p.m. shift on a regular work day, Thursday April 27, 2016, as he accompanied a PCMH resident who requested emergency medical assistance to the Program Director's office on the fifth floor. *See id.* None of PCMH's actions or conduct constitute willful violations of federal or state labor laws.

**B.  Plaintiff Cannot Establish His Entitlement to Equitable Tolling**

In support of his contention that equitable tolling applies, plaintiff argues that Human Resources Director Danielle Hunter, had no personal knowledge as to whether the FLSA and NYLL employee rights notices that human resources provided annually to Columbia Street were posted in the fifth floor employee offices; and, argues that even if the notices were posted in the

13

fifth floor employee offices, plaintiff was not seated in the fifth floor employee office to see the notices. However, Edna Sams, regional director for Columbia Street who regularly visited the Columbia Street Residence confirms that the Employee Rights Under the FLSA, an NYLL Minimum Wage Poster and other FLSA and NYLL notices of employee rights were regularly updated and conspicuously posted on a bulletin board in the fifth floor employee office[2]; and, plaintiff concedes that the fifth floor office was an open office which he regularly cleaned and maintained, and the evidentiary record demonstrates that plaintiff escorted residents to the program director inside the fifth floor employee offices. *See id.*, at ¶ 74, Ex. "P" Perez Dep. 101:13-102:5.

Furthermore, plaintiff's own case law demonstrates that plaintiff is not entitled to equitable tolling because he lacked due diligence in pursuing his alleged wage claims. *See Valdez v. United States*, 518 F.3d 173, 182 (2d Cir. 2008) ("Equitable tolling permits a plaintiff to avoid the bar of the statute of limitations *if despite all due diligence* he is unable to obtain vital information bearing on the existence of his claim") (emphasis added); *Veltri v. Bldg. Serv. 32b-J Pension Fund*, 393 F.3d 318, 323 (2d Cir. 2004); *see also Smith v. Am. President Lines, Ltd.*, 571 F.2d 102, 109-10 (2d Cir. 1978) (tolling inappropriate, despite failure to post notice of rights under Title VII, where plaintiff retained attorney during limitations period and thus "had access to a means of acquiring knowledge of his rights"); *Parada*, 753 F.3d at 71 ("To the contrary, by asking the DOL to review her claim in 2008 — well within the two-year statute of limitations — Parada showed that she was capable of taking legal action much earlier"); *Patraker v. Council on the Env't*, No. 02-cv-7382 (LAK) 2003 WL 22703522, at *2 (S.D.N.Y. Nov. 17, 2003) (plaintiff "cannot hide behind the allegedly limited scope of his retainer of the attorney for the simple reason that the limitation of

---

[2] Notably, plaintiff only deposed Ms. Sams for approximately one hour and never examined her regarding the FLSA and NYLL employee rights notices posted on the fifth floor. (*See* DCOF at Ex. "O" Sams Dep. 1, 59).

14

the scope reflects his own lack of due diligence").

The evidentiary record demonstrates Plaintiff lacked due diligence in pursuit of his wage and hour claims:

- Plaintiff testified, under oath, that as early as 2016, prior to his termination, he "got hip" and believed that he was not compensated properly. *See* DCOF at ¶ 72.

- In approximately August 2016, plaintiff retained V. Jonas Urba, Esq. of the Urba Law Firm to assist him and pursue unemployment benefits in regard to his employment tenure at PCMH. *See id.*

- Plaintiff voluntarily elected never to review the payroll notices which PCMH made available to him, including his WTPA notices and bi-monthly pay stubs. *See id.*, at ¶ 63.

- Plaintiff admitted that he was not denied access to his earning statements. When specifically asked whether he was denied access to his earning statements, plaintiff replied, "No, I wasn't". *See id.*, at Ex. "P" Perez Dep. 243:8-244:10.

## POINT III
## PLAINTIFF'S NEW YORK STATE OVERTIME CLAIMS FAIL BECAUSE HE WAS AN EXEMPT "RESIDENTIAL JANITOR"

Plaintiff erroneously claims that he is entitled to New York state overtime and that the New York's Minimum Wage Order for the Building Services Industry ("Wage Order") does not apply to him or PCMH. However, the law is clear - plaintiff meets the Wage Order's definition of an exempt "residential janitor" and it is undisputed that PCMH is the operator of residential facilities for Supported Housing residents, people with mental illness, chronic homelessness, and drug dependence. *See* Hunter Decl. ¶ 3. PCMH is subject to the Wage Order, because it meets the Wage Order's definition of a covered entity, i.e., it is a corporation "**engaged *in whole or in part* in renting, servicing, cleaning, maintaining, selling, or managing buildings or building space**". *See* 12 NYCRR § 141-3.1 (emphasis added). Each resident of Columbia Street is subject to a lease and pays rent. *See* DCOF at ¶ 77. Indeed, PCMH's function as the owner and operator of <u>residential</u> facilities for people with mental illness is established in its charter. The Columbia Street Residence

15

constitutes a residential building, and does not constitute a "mental institution" as plaintiff's counsel has offensively referred to it. *See* Sams Decl. ¶¶ 3-4.

The Wage Order exempts an employee performing the duties of a "residential janitor" from its overtime requirements; and defines a residential janitor as: "a person employed to render any physical service in connection with the maintenance, care or operation of a residential building" and who "resides in the building where he or she renders service." *See* 12 NYCRR § 141-3. The evidentiary record, including plaintiff's own deposition testimony, establishes that Plaintiff was the sole live-in superintendent at the Columbia Street Residence and therefore exempt under the Wage Order. *See* DCOF at ¶ 7; *Lee v. Kim*, No. 12-cv-316 (RER), 2013 WL 4522581, (E.D.N.Y Aug. 27, 2013). A live-in superintendent is not entitled to overtime pay under the NYLL. *See* 12 NYCRR § 141-1.4; *Koljenovic v. Marx*, 999 F. Supp. 2d 396, 400 (E.D.N.Y. 2014).

## POINT IV
## PLAINTIFF'S WAGE, OVERTIME, ON CALL, AND MEAL BREAK CLAIMS ARE PRECLUDED BY THE UNDISPUTED EVIDENTIARY RECORD

In the event that plaintiff establishes his entitlement to an extended limitations period, which he cannot, plaintiff is not entitled to summary judgment on his wage, overtime, on-call, and meal break claims because the undisputed evidentiary record precludes plaintiff from establishing as a matter of law that he actually worked any hours (on-call hours or otherwise) that he did not get paid for.

### A. The Evidence and Plaintiff's Own Admissions Preclude His Wage/Overtime Claims

It is respectfully submitted that the undisputed evidentiary record, including PCMH's payroll records and plaintiff's own admissions, establish that plaintiff was appropriately paid for each and every time he worked, that his time records and wage statements are accurate, and therefore preclude plaintiff from establishing that he was required to work off the clock. *See*

16

*Anderson*, 328 U.S. 680 at 687 ("When the employer has kept proper and accurate records, the employee may easily discharge his burden by securing the production of those records").

Plaintiff's citation to *Padilla* is inapposite to the instant matter, in that the Court only allowed plaintiff to use her own recollection to determine unpaid wages and granted plaintiff summary judgment on her minimum wage and overtime claims because defendants failed to preserve or present all of plaintiff's employment records for the statutory period and only after the defendants admitted that plaintiff had in fact worked the amount of hours he alleged to have worked. *Padilla v. Manlapaz*, 643 F. Supp. 2d 302, 308 (E.D.N.Y. 2009).  Here, PCMH produced plaintiff's complete wage and hour records for the entire statutory period  - over 230 pages of plaintiff's time records and earning statements - that demonstrate, *inter alia*, PCMH complied with recordkeeping standards pursuant to the FLSA and the NYLL; plaintiff worked on average a 35-hour workweek consistent with the Transfer Confirmation Agreement plaintiff signed and consistent with PCMH policy which defines a fulltime employee as one who is scheduled to work 35 hours per week; plaintiff regularly clocked in if he worked overtime hours or hours outside of his regular schedule; and, in the event he forgot to clock in, plaintiff was nonetheless paid for all hours worked because he notified his supervisor who would log the time. *See* DCOF at ¶ 33.

Plaintiff's claims are also fatally undermined by his under oath deposition testimony wherein he concedes that his 2015 and 2016 time records and earning statements are accurate and that he has no supportive documentation or witnesses to controvert PCMH's time records and earning statements. This concession vitiates his motion for summary judgment as to any FLSA claim which accrued during the FLSA period. *See* DCOF at ¶ 31. PCMH's records are indisputably accurate as plaintiff confirms, and plaintiff is unable to use these records to meet his burden of "proving that he performed work for which he was not properly compensated." *See  Anderson*, 328

U.S. 680 at 687.

Moreover, plaintiff's allegations that he worked on-call hours and was told to clock out at 4:00 p.m. but continue to work until 6:00 p.m. and then 11:00 p.m. are not only untrue, but, they are unsupported by any evidence and the allegations are fatally undermined by PCMH's undisputed records which establish that on the occasions when plaintiff worked beyond his regular schedule the hours were logged and he was indisputably paid for them, *inter alia*, that:

- From February 15, 2013 – the NYLL statute of limitations date – to December 31, 2013 there were 45 instances over 23 work weeks in which plaintiff clocked out late, or clocked in to perform work after his regular shift concluded or on his days off;

- In 2014, there were 50 instances over 20 work weeks in which plaintiff clocked out late, or clocked in to perform work after his regular shift concluded or on his days off;

- In 2015, there were 54 instances over 25 work weeks in which plaintiff clocked out late, or clocked in to perform work after his regular shift concluded or on his days off; and,

- In 2016, there were 20 instances over 13 work weeks in which in which plaintiff clocked out late, or clocked in to perform work after his regular shift concluded or on his days off.

DCOF at ¶ 35. Plaintiff was paid for each and every one of those instances at his regular rate for hours between 35 and 40, and at the overtime rate for hours in excess of 40 in the work week. *See id.*; *compare Kuebel*, 643 F.3d at 363 (holding that an issue of fact is created where time sheets showed only one instance of overtime over nine-month period and plaintiff alleged that he was forbidden from accurately recording overtime work on his time sheets) *with* DCOF at ¶ 41 ("In 2016, there were 13 work weeks [over six months] in which plaintiff worked in excess of 35 hours").

Plaintiff places great emphasis that he was told by Harold Moss, former PCMH Vice President of Residential Operations, to clock out at 4:00 p.m. and continue to work. Plaintiff cannot state when Mr. Moss or anyone allegedly told him to do this, has proffered nothing more than his unsupported allegation; and, as is clear from PCMH employees who were present and worked with

18

Mr. Moss during his tenure, Mr. Moss never made the statement. *See* DCOF Ex. "P" Perez Dep. 60; Sams Decl. ¶¶ 28-33 Hunter Decl. ¶¶ 33-38.  Moreover, not only is the statement untrue, it is also irrelevant as plaintiff signed and acknowledged two WTPA notices, was furnished with biweekly pay statements that he chose never to review, and notices of employee rights were posted in the fifth floor employee offices which he cleaned, maintained and escorted a resident to. Plaintiff admits – under oath – that his time and payroll records for 2015 and 2016 are accurate. DCOF ¶¶ 20, 31, 63. Defendant respectfully submits that in light of the undisputed evidentiary record, plaintiff's allegation fails to meet even the most lenient of standards. *See Kuebel*, 643 F.3d at 363.

**B. Plaintiff Cannot Establish PCMH had Knowledge of His Alleged Additional Work.**

This evidentiary record also precludes plaintiff from demonstrating that he actually performed any unrecorded work, overtime, or meal time work of which PCMH had actual or constructive knowledge as a matter of law, the *sine qua non* of determining overtime liability. *See Daniels v. 1710 Realty LLC*, 497 F. App'x 137 (2d Cir. 2012); *Kuebel*, 643 F.3d at 363 ("[A] plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work"); *Chao*, 514 F.3d at 287*; O'Donnell v. Jef Golf Corp.*, 2019 NY Slip Op 05040, ¶ 1, 173 A.D.3d 1528 (3d Dep't 2019) ("employee has the burden of proving that he or she performed work for which he or she was not properly compensated"); *see also Holzapfel v. Town of Newburgh*, 145 F.3d 516, 524 (2d Cir. 1998) (holding that an employee is not working for the employer's benefit if the employer has no knowledge of it); *Hinterberger v. Catholic Health Sys.*, 299 F.R.D. 22, 45 (W.D.N.Y. 2014); *Gordon v. Kaleida Health*, 299 F.R.D. 380, 396 (W.D.N.Y. 2014).

PCMH's reasonable reporting procedures and the deposition testimonies of Director of Human Resources Danielle Hunter, and Regional Director Edna Sams, who supervised plaintiff, confirm that PCMH could not have had actual or constructive knowledge of plaintiff's alleged

work during meal breaks or alleged additional overtime work as a matter of law because plaintiff knew of PCMH's reasonable reporting policies and procedures and consistently utilized them.   As Plaintiff readily admitted under oath at his deposition, if he worked unrecorded hours, he would tell his supervisor, who would record the hours so that he got paid.  *See* DCOF at ¶ 33; *see also Mendez v. U.S. Nonwovens Corp.*, No. 12-cv-5583 (ADS)(SIL), 2016 WL 1306551, at *6 (E.D.N.Y. Mar. 31, 2016) ("the existence of a policy of mandatory meal breaks with an automatic pay deduction for the break time "by itself, does not violate the FLSA"); *Ellis v. Commonwealth Worldwide Chauffeured Transp. of NY, LLC*, No. 10-cv-1741 (DLI)(JO), 2012 WL 1004848, at *9 (E.D.N.Y. Mar. 23, 2012) ("Plaintiff has not pointed to any evidence in the record that Defendants violated their written policies and declined to pay Plaintiff when he told his supervisor that he could not take a meal break"); *Hinterberger*, 299 F.R.D. at 45 ("Several Circuit Courts … expressly declined to place the onus on employers to ferret out work that is not reported under its reasonable procedures"); *Gordon*, 299 F.R.D. at 396 (*citing Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981) in which the Ninth Circuit affirmed grant of summary judgment to employer where store employee was required to report overtime on time sheets, was paid for all hours he reported, and did not raise material issue of fact as to employer's knowledge).

PCMH's logbook further demonstrates that plaintiff's regular workday ended at 4:00 p.m., not 6:00 p.m., and that plaintiff would clock in again when he had to return to work. For example, on Sunday March 13, 2016 at 4:20 p.m., twenty minutes after he clocked out and his regular shift ended, plaintiff was contacted, but did not answer, a call from PCMH staff to attend to a washing machine that malfunctioned and caused a flood in the laundry room. Plaintiff still had not responded by 5:58 p.m. when a tenant notified PCMH staff that a light was out and water was still on the floor in the laundry room. Plaintiff received no discipline for his absence. *See* DCOF ¶ 42.

20

Plaintiff concedes that he knew that in order for PCMH to track his hours he would need to clock in and clock out via the electronic timekeeping system and he availed himself of PCMH's reasonable reporting procedures when he did not, i.e., he admits that in the event he did not clock in/out, he would tell his director, she would record the time for him in PCMH's time keeping system, and he was paid for the time that he worked. *See* DCOF, Ex. P Perez Dep. 192:4-25; *See Ellis*, 2012 WL 1004848, at *9; *Gordon*, 299 F.R.D. at 396; *Forrester*, 646 F.2d at 414; *Kolesnikow v. Hudson Valley Hosp. Ctr.*, 622 F. Supp. 2d 98, 118-19 (S.D.N.Y. 2009) (plaintiff's overtime claim failed where she only testified that she "sometimes" worked through her half-hour lunch break, and that she worked an unspecified amount of time past the end of her shift two or more times a week).

### C.  The Evidentiary Record Precludes Plaintiff's On-Call Claim

Plaintiff is not entitled to any compensation during any hours he was "on call," even if he was expected to be reachable for emergencies because the evidentiary record – including his own admissions – establishes that he indisputably engaged in personal activities after hours and was free to leave the premises. [3] *See* 29 C.F.R. §§ 785.17, 785.23 ("An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises"); 12 NYCRR §412-2.1(b); *Singh v. City of New York*, 524 F.3d 361 (2d Cir. 2008) (employees may only seek compensation for time spent "on-call" where their employer restricts their ability to use time freely for their own benefit); *Calderon v. Mullarkey Realty, LLC*, No. 14-CV-2616 (PKC)(RLM), 2018 WL 2871834, at *17 (E.D.N.Y. June

---

[3] Plaintiff engaged in personal activities afterhours by, *inter alia*, watching television in the evenings; entertaining overnight guests at least once or twice a week; taking vacation time; going on cruises; maintaining a long-term romantic relationship with Catarina "Cathy" Marinara and taking her to restaurants; consuming alcohol afterhours; and, leaving the Columbia Street Residence to consume alcohol at local Brooklyn bars. *See* DCOF at ¶ 56.

10, 2018) ("The NYLL incorporate[s] FLSA standards for determining whether time worked is compensable time"); *Andryeyeva v. New York Health Care, Inc.*, 45 Misc. 3d 820 (Sup. Ct. 2016); *see also Vega v. Trinity Realty Corp.*, No. 14-cv-7417 (RJS)(KNF), 2015 WL 13203451, at *6 (S.D.N.Y. July 28, 2015) ("absent any evidence in support of a conclusory assertion that [plaintiff] was on call 24 hours per day, seven days per week, the Court cannot conclude that [plaintiff] was on call … awaiting work assignments").

Notable to his on-call claims, PCMH never disciplined plaintiff for his personal consumption of alcohol or his decision to leave the premises and frequent local bars after his regularly scheduled shift. PCMH counseled plaintiff that *public* intoxication at a facility with Supported Housing residents was not acceptable, yet plaintiff was party to two drunken, verbal altercations in a public space at Columbia Street, and was terminated only after verbally assaulting and making rude gestures toward a resident. Furthermore, the Columbia Street Residence log book, incident reports and plaintiff's time records also demonstrate that plaintiff was free to engage in personal activities after his regularly scheduled shift and that he clocked in and clocked out each time he was on duty regardless of the assignment. Examples include, *inter alia*:

- On Thursday March 10, 2016, plaintiff clocked in and out from 10:00 a.m. to 10:55 a.m. while on vacation and was paid for one hour of work for assisting a New York City Marshall with a tenant eviction;

- As discussed above, on Sunday March 13, 2016 at 4:20 p.m., twenty minutes after he clocked out and his regular shift ended, plaintiff was contacted, but did not answer, a call from PCMH staff to attend to a washing machine that malfunctioned and caused a flood in the laundry room. Plaintiff still had not responded by 5:58 p.m. when a tenant notified PCMH staff that a light was out and water was still on the floor in the laundry room. plaintiff received no discipline for his absence;

- On Friday March 18, 2016, a regular day off, plaintiff clocked in at 9:24 a.m. and clocked out at 10:31 a.m. and was paid for one hour of work for assisting the program director with an emergency in a resident's apartment;

- On Sunday April 3, 2016, at 1:21 a.m. PCMH staff left a note in a log book entry for plaintiff to receive later that morning at the beginning of his 8:00 a.m. shift requesting that

> he wash the blinds in the program directors office located on the fifth floor. Plaintiff was not required to attend to the assignment at the time the request was made as plaintiff was scheduled to work, did work and was paid for his regular shift on Sunday April 3, 2016.

*See* DCOF ¶ Def. 107. Moreover, the evidentiary record establishes that plaintiff's assertion that he regularly responded to after-hours emergencies is wrong. Columbia Street Residence incident reports establish that only six emergency incidents occurred at Columbia Street during the FLSA statutory period, February 15, 2016 through plaintiff's June 6, 2016 termination. Of those six, plaintiff only responded to one incident that occurred <u>during</u> his regular 8:00 a.m. to 4:00 p.m. shift when he escorted a resident to the Program Director's fifth floor office. *See* DCOF at ¶ 52.

PCMH did not restrict or hinder plaintiff for using his time off freely, and as a result plaintiff is not entitled to any additional compensation for time on-call. Plaintiff's overtime allegations are demonstrably false, and PCMH was not required to "ferret out" alleged, additional work hours that plaintiff failed to report, as a matter of law. *See Hinterberger*, 299 F.R.D. at 45; *Daniels v. 1710 Realty LLC*, 10-cv-0022 (RER), 2011 WL 3648245, *6 (E.D.N.Y. Aug. 17, 2011) ("Given that the Building had no regular operating hours and was literally 'open' 24 hours, 7 days per week, [plaintiff] cannot meet the just and reasonable inference standard merely by testifying that he worked "X" number of hours per week. More must be shown.")

### D. Plaintiff is Not Entitled to Overtime Wages Inclusive of the Value of His Apartment

Plaintiff incorrectly alleges that the value of the superintendent's apartment should be used to calculate plaintiff's overtime rate.  Plaintiff is wrong.  As discussed above, plaintiff was a residential janitor, and is not entitled to overtime wages pursuant to the NYLL; and, the two-year statute of limitations applies to plaintiff's FLSA claims, vitiating any and all of plaintiff's claims to overtime or further compensation. *See* 12 NYCRR § 141-1.4; *Koljenovic*, 999 F. Supp. 2d at 400; *Garcia*, 2019 WL 4640260, at *12. Furthermore, PCMH at no point took a housing credit pursuant to § 3(m) of the FLSA. *See* DCOF Exs. "E" and "F" 2012 and 2013 WTPA Notices; 29

U.S.C. 203(m).  Even if plaintiff was entitled to the value of the superintendent's apartment as part of his overtime wages, which he is not, PCMH's expert, Domenick Neglia of Neglia Appraisals, Inc., completed an analysis of the marketability of Plaintiff's superintendent apartment and concluded that the estimated market rental value of superintendent's apartment unit within a Supported Housing residential building was $0.00, thus the estimated market rental value of Plaintiff's apartment does not increase the Plaintiff's effective hourly rate of pay. DCOF ¶ 28.  Plaintiff did not work any regular hours for which he was not paid, and did not work any overtime hours whatsoever within the FLSA statutory period, February 15, 2016 through June 6, 2016, and PCMH made complete and timely payments of all wages to plaintiff. *See* Hunter Decl. ¶ 17; DCOF Exs. "G"–"L"; NYLL § 198(1-d).

## POINT IV
## PLAINTIFF'S WAGE NOTICE CLAIMS ARE PRECLUDED AS A MATTER OF LAW

Plaintiff's claim that he is owed damages because he was not provided with appropriate New York annual wage notices and pay statements is simply wrong. The NYLL WTPA has <u>never</u> provided a private right of action for violations of its annual notice requirements – it <u>only</u> provides a right of action for failure to provide a proper wage notice <u>upon hiring</u>. *See* NYLL § 198(1-b) (originally enacted as part of the WTPA, 2010 N.Y. LAWS 564, § 7); *Cabrera v. Canela*, 412 F. Supp. 3d at 185 ("the WTPA did not provide for damages for annual wage notice violations…"). PCMH hired plaintiff on June 25, 2008, three years prior to the WTPA's April 9, 2011 effective date, and as such cannot be liable for not providing plaintiff with new employee notice.

Moreover, Plaintiff's annual notice claim is further vitiated by plaintiff's under oath admission and the documentary evidence which establish that he signed an acknowledgment of receipt for his annual notices in 2012 and 2013. *See* DCOF at ¶ 20; NYLL § 195; *Marin v. Apple-Metro, Inc.*, No. 12cv-5274 (ENV)(CLP), 2017 WL 4950009, at *34 (E.D.N.Y. Oct. 4, 2017) ("provided that the notice was given and the employee acknowledged receipt, the extent to which

24

the employee did or did not understand the contents of the notice is not material"); NYLL § 198(1-b) (originally enacted as part of the WTPA, 2010 N.Y. LAWS 564, § 7). PCMH also furnished plaintiff with wage statements on each pay date; the wage statements included all requisite NYLL information; and, PCMH maintained and preserved payroll records along with the time records. *See* DCOF at ¶ 31; 29 C.F.R. § 516.5 ("Each employer shall preserve for at least three years: (a) Payroll records …"); NYLL § 195(3) (employers must "furnish each employee with a statement with every payment of wages…"); NYLL § 195(4) (setting six years recordkeeping statute).

Moreover, the documentary evidence also establishes that PCMH made complete and timely payment of plaintiff's wages, an affirmative defense to NYLL wage notice and wage statement violations, and, as plaintiff conceded, under oath, his 2015 and 2016 time records and earning statements, and that those records are accurate. *See* NYLL § 198. *See* DCOF at ¶ 32.

## CONCLUSION

For the foregoing reasons, PCMH respectfully requests that Plaintiff's Rule 56 motion be denied in its entirety, that each of plaintiff's causes of action be dismissed, and that the Court grant such other and further relief as the Court deems just and proper.

Dated:   New York, New York
         August 26, 2020

                            YOURS, etc.,
                            WILSON, ELSER, MOSKOWITZ,
                            EDELMAN & DICKER LLP

                    By: _____
                            Celena R. Mayo
                            Josef K. Mensah
                            Attorneys for Defendant
                            150 East 42nd Street New York, NY 10017
                            Ph: (212) 490-3000/Fx: (212) 490-3038