**UNITED STATES DISCTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Jose Perez,<br><br>Plaintiff,<br>-v-<br><br>Postgraduate Center for Mental Health,<br><br>Defendant. | **Civ. Action #: 19-CV-00931 (EK)(PK)**<br><br>**REPLY MEMORANDUM OF LAW**<br>**(Motion for Summary Judgment)** |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY AND DAMAGES**

ABDUL HASSAN LAW GROUP, PLLC
By: Abdul K. Hassan, Esq.
*Counsel for Plaintiff*
215-28 Hillside Avenue,
Queens Village, NY 11427
Tel: 718-740-1000

SERVED ON SEPTEMBER 22, 2020

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ....1

II. ARGUMENT ....1

1 AS DEFENDANT CONFRONTS THE LAW AND FACTS, ITS POSITION CRUMBLES ....1

2. DEFENDANT EXCLUDED FROM WAGE ORDER ....3

3. DEFENDANT DID NOT ADDRESS AND CONCEDES THAT PLAINTIFF IS ENTITLED TO OVERTIME UNDER NYLL ARTICLE 6 ....4

4. DEFENDANT DID NOT OPPOSE AND DID NOT EVEN ADDRESS PLAINTIFF'S ARGUMENT CONCERNING DAMAGE CALCULATIONS AND LIQUIDATED DAMAGES IF HE PREVAILS ON LIABILITY ....4

5. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON HIS OVERTIME CLAIMS ....4

6. FAILURE TO INCLUDE APARTMENT VALUE IN OVERTIME WAGES ....7

7. DEFENDANT LIABLE FOR WAGE STATEMENT/NOTICE CLAIMS ....7

8. DEFENDANT'S CONDUCT WAS WILLFUL ....8

9. EQUITABLE TOLLING APPLIES ....8

III. CONCLUSION ....10

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946)....................5

*Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 148 (2d Cir. 2008)....................5

*Barrentine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728 (1981)....................5

*Byrnie v. Town of Cromwell, Bd. Of Educ.*, 243 F.3d 93, 109 (2d Cir. 2001)....................2

*Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943, 946 (2d Cir. 1959)....................5

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015)....................5, 10

*Daniels v. 1710 Realty LLC*, No. 10-CV-0022 RER, 2011 WL 3648245 (E.D.N.Y. Aug. 17, 2011)....................2

*Herron v. Inv. Professionals Inc.*, No. CV 15-1664, 2016 WL 6652756, at 3 (W.D. Pa. Nov. 9, 2016) ....................2

*Holzapfel v. Town of Newburgh, N.Y.*, 145 F.3d 516, 524 (2d Cir. 1998)....................6

*IBP, Inc. v. Alvarez,* 546 U.S. 21, 22, 126 S. Ct. 514, 517, 163 L. Ed. 2d 288 (2005),....................6

*Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011)....................5

*Patraker v. Council on the Env't,* No. 02-cv-7382 (LAK) 2003 WL 22703522 (S.D.N.Y. Nov. 17, 2003)....................10

*Veltri v. Bldg. Serv. 32B-J Pension Fund,* 393 F.3d 318, 323–24 (2d Cir. 2004)....................9, 10

## Statutes

FRCP § 3(m) .......................................................................................................................7

**Rules and Regulations**

29 CFR § 785.16 (b) ..........................................................................................................6

29 CFR § 778.116 ...............................................................................................................7

## I. PRELIMINARY STATEMENT

Plaintiff Jose Perez ("Plaintiff" or "Perez"), submits this Reply Memorandum of Law in further support of his motion for summary judgment and further opposition to the summary judgment motion of Post Graduate Center for Mental Health ("Defendant" or "PCMH").

## II. ARGUMENT

### 1. AS DEFENDANT CONFRONTS THE LAW AND FACTS, ITS POSITION CRUMBLES

At the pre-motion conference on August 8, 2019, and although the Court cannot prevent a party from making a motion, the discussions with the Court did force Defendant to focus on certain issues, and its motion to dismiss collapsed. See ECF No. 17 ("after due consideration PCMH will not pursue its proposed motion to dismiss"). Settlement was discussed and case was referred to Magistrate Judge. The Magistrate-Judge at the November 5, 2020 initial conference also raised settlement but noted that, "Defendants indicated that they are not interested in mediation or settlement discussions. (11/5/2020)." It seemed odd that Defendant would rebuff the settlement attempts of both judges in a federal case, especially given the significant legal issues – many of which Defendant cannot even oppose as set forth below. Indeed, based on the statements at the initial conference, it appeared that Defendant's opposition to settlement discussions – like its opposition to many of the claims in this case, is driven by its anger over losing the unemployment insurance case to Plaintiff in which the judge rejected the termination claims of misconduct after taking testimony from Defendant and awarded Plaintiff benefits (Def. Ex. HH) - even though wrongful termination claims are not in this case because of at will employment doctrine, etc.

Defendant's focus on false, rejected and irrelevant termination/behavioral claims is an attempt to confuse and distract from the relevant law and facts which favor Plaintiff in this case. Similarly, Defendant also attacks Plaintiff counsel's declaration (Def. Mem. 10-11), which merely identifies, describes and explains the relevance and context of evidence. Moreover, Plaintiff's

counsel does have personal knowledge of the litigation facts and can testify as to such facts – such as Defendant's willful failure to produce documents/records for the period prior to February 2013 which warrants sanctions and similar remedies under *Byrnie v. Town of Cromwell, Bd. Of Educ.*, 243 F.3d 93, 109 (2d Cir. 2001). (Pl. Mem. 4). In response, Defendant argues that it was only required to keep records for a six-year period. (Def. Mem. 11). However, Defendant was required to produce relevant/discoverable documents in its possession or control even if it was not required by law to keep them longer than six years before the case, and Defendant does not dispute that it has wage and time records prior to February 2013 which are relevant and material especially in light of the equitable tolling argument but which Defendant intentionally refused to produce. A defendant who refuses to produce discovery, does so at its peril and Plaintiff need not first seek any discovery orders to force Defendant to produce what it affirmatively should.

Moreover, Defendant now seems to be trying to create doubt and disputes, to survive summary judgement instead of really and truly seeking summary judgment in its favor, including its reliance on cases such as *Daniels v. 1710 Realty LLC*, No. 10-CV-0022 RER, 2011 WL 3648245 (E.D.N.Y. Aug. 17, 2011). Notably, after the parties filed pre-motion letters in *Daniels*, the district judge communicated to the parties that issues of fact would preclude summary judgment and the case went to trial as a result. The evidence in *Daniels* was sufficient for a trial win for the plaintiff but as the factfinder in a bench trial, the Magistrate-Judge was free to believe or not believe the parties. See i.e. *Herron v. Inv. Professionals Inc.*, No. CV 15-1664, 2016 WL 6652756, at 3 (W.D. Pa. Nov. 9, 2016) ('Daniels is easily distinguishable, as it was an appeal from findings of fact and conclusions of law at a bench trial. 497 Fed.Appx. at 138. The vague testimony referred to in Daniels was subject to the credibility determination of a factfinder. Id. at 139. In the instant case, no such credibility determination may be made at this stage.').

Indeed, one of the little known facts about *Daniels* is that after the plaintiff testified at trial and after testimony from defendant, defendant made its *first* and not insignificant settlement offer in the history of the case with the explanation that the plaintiff was credible and could win but not as much as he was seeking – the lower court ruling therefore, was likely a surprise for both sides and has not been replicated as far as is known[1]. It is also highly unlikely that the Magistrate-Judge in *Daniels* would rule the same way today, especially if he knows what the defense really believed about the plaintiff's credibility in private.

Notably, *Daniels,* 2011 WL 3648245, at 7, held that the value of the apartment should be included as wages, and the district judge in Daniels issued an order directing the defendant to produce very specific information not produced by Defendant here, about the wage poster and inviting Plaintiff to seek summary judgment on equitable tolling. (Case: 10-CV-22, ECF No. 24).

Unlike *Daniels*, summary judgment in Plaintiff's favor is warranted here for several compelling reasons: 1) unlike Daniels there are no witnesses here with knowledge who can contradict Plaintiff's testimony and create issues of fact; 2) unlike Daniels, there are some records in this case – records which show no punch in and out for lunch and that Plaintiff was required to be working on-call 24/7 to take care of the building, etc. (Ex. 4, 15); and 3) the main issue here seems to be legal and not factual – whether non-physical waiting/on call time/work can constitute work under the FLSA and NYLL.

**2. DEFENDANT EXCLUDED FROM WAGE ORDER**

For about the fourth time, Defendant does not address the argument and does not dispute that because of 12 NYCRR § 141-3.1(b), it would be excluded from coverage under Building Service Industry Wage Order ("BSIWO"), and that its janitorial affirmative defense would fail as a result. (Pl. Memo 21-22). Nonetheless, Defendant invokes 12 NYCRR § 141-3.1(a) (Def. Memo

[1] Plaintiff's counsel in this case also represented the Plaintiff in Daniels.

15), and argues in essence, that even though it is excluded from coverage under 12 NYCRR § 141-3.1(b) it is covered under the definition in 12 NYCRR § 141-3.1(a). However, it is clear and obvious that the language and in 12 NYCRR § 141-3.1(b), is an exclusion from, and a limitation of the definition in 12 NYCRR § 141-3.1(a). Defendant's purported interpretation would render 12 NYCRR § 141-3.1(b) meaningless, because every person or entity excluded under 12 NYCRR § 141-3.1(b), would be included under 12 NYCRR § 141-3.1(a) and subject to the exclusion.

### 3. DEFENDANT DID NOT ADDRESS AND CONCEDES THAT PLAINTIFF IS ENTITLED TO OVERTIME UNDER NYLL ARTICLE 6

It does not appear that Defendant addressed or opposed Plaintiff's Article 6 argument that he is also entitled to recover unpaid overtime and other wages pursuant to him employment agreement via Article 6. (Pl. Memo 14-16). In fact, Defendant attached an agreement confirming that there was an agreement for the parties to be paid in accordance with the FLSA – an agreement/policy that is actionable under Article 6. (Hunter Ex. D; Sams Ex. C. Def. Ex. S)("Non-exempt employees will receive overtime compensation according to federal labor law.").

### 4. DEFENDANT DID NOT OPPOSE AND DID NOT EVEN ADDRESS PLAINTIFF'S ARGUMENT CONCERNING DAMAGE CALCULATIONS AND LIQUIDATED DAMAGES IF HE PREVAILS ON LIABILITY

It does not appear that Defendant has opposed the calculation of damages and liquidated damages that would be owed to Plaintiff if he prevails on lability. Instead, Defendant appears to only argue that Plaintiff should lose on the liability issues and if that happens there is no need to address damages. Conversely, if this Court awards Plaintiff summary judgment as to liability, it can and should award Plaintiff summary judgment as to damages in the amount requested by Plaintiff, especially in light of the lack of opposition from Defendant.

### 5. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON HIS OVERTIME CLAIMS

Defendant purports to oppose Plaintiff's overtime claims on several grounds.

First, any argument that Plaintiff waived his overtime rights because of purported policies, practices, etc., of Defendant is wholly without merit as overtime rights cannot be waived in such a manner. (Def. Memo 14-15). See *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015)(holding that waiver of FLSA rights requires court approval); See also *Barrentine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728 (1981).

Second, Defendant's records and testimony compellingly supports Plaintiff in many significant ways that warrant summary judgment in his favor. See i.e. (PASOF ¶ 47-49); (Ex. 4, 15). However, Plaintiff does not need any evidence beyond his own recollection because "consistent with *Anderson,* [Plaintiff's] burden in this regard is not high," and Plaintiff can satisfy this low burden with "estimates based on his own recollection" - it is Defendant that has a stringent burden of rebuttal and its witnesses do not even have personal knowledge of Plaintiff's actual work and hours. *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011); *Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680 (1946). Nonetheless, Defendant's records argument has already been rejected in *Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943, 946 (2d Cir. 1959).

Third, Defendant's argument that is did not have actual or constructive notice easily fails. For example, the written lease agreement (Ex. 4), along with other evidence (i.e. Ex. 15), required Plaintiff to work on call 24 hours a day, 7 days a week upon penalty of termination, and Defendant's time records show no punch in and out for lunch, etc. *See Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 148 (2d Cir. 2008) (affirming summary judgment to plaintiff on her overtime claim and noting that "Defendants do not—and cannot—argue that Barfield, by working more than 40 hours on some weeks despite her knowledge of Bellevue's resistance to overtime, somehow waived her FLSA overtime rights. *See Barrentine*"). See *Holzapfel v. Town of Newburgh, N.Y.*, 145 F.3d 516, 524 (2d Cir. 1998) ("Although Officer Holzapfel was told that he would be paid for only two overtime hours per week, he was never directed to limit his off-duty

activities to those two hours for which he was compensated."). Significantly, ignorance of the law – what constitutes work, etc. - does not constitute lack of notice.

Contrary to Defendant's position, it was required to pay Plaintiff for all of his on-call time that meets the definition of work and not just the actual physical work performed while he was on call. 29 CFR § 785.16 (b)("Waiting is an integral part of the job."). In *IBP, Inc. v. Alvarez*, 546 U.S. 21, 22 (2005), the U.S. Supreme Court explained 'that "an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen."'). In other words, because waiting was an integral part of Plaintiff's job while on-call, his on-call time would be compensable even if he was watching television, listening to the radio, etc. – even though Defendant distorts the testimony and evidence in this regard as well. (PCSOF ¶ 43-48). (PSOF ¶ 33-56).

The on-call claim also includes all time including the work-time from 4PM to 6PM. Notably, however, Defendant does not dispute that if Mr. Moss did in fact tell Plaintiff to punch out at 4:00 p.m. and continue working, that such time from 4:00 p.m. to 6:00 p.m. when Plaintiff said he performed additional physical work would be compensable even if Defendant's records terminated at 4:00 p.m. Summary judgment is warranted in Plaintiff's favor because there is no testimony in the record from Mr. Moss to contradict Plaintiff's testimony and because this period from 4PM to 6PM is also included in the on-call overtime claim. (Pl. Memo 11-14).

In opposition to the lunch time claim (Pl. Memo 14-15), Defendant appears to primarily rely on certain deposition testimony of Plaintiff which is included in Defendant's memo. However, in the subject testimony Plaintiff was not testifying about lunch breaks and was referring to another type of overtime that he worked (PSOF ¶ 40) – certain overtime that was specifically approved by Defendant – very different from the lunch time overtime and the off the clock overtime that makes up the bulk of Plaintiff's claims. (Hunter Tr. 42 – "The policy is that the hour for lunch is

automatically deducted.”). Defendant is in a strange position on the lunch time claim of having to attack its own punch clock records which show no punch in and out for lunch.

**6. FAILURE TO INCLUDE APARTMENT VALUE IN OVERTIME WAGES**

Defendant argues that, "PCMH at no point took a housing credit pursuant to § 3(m) of the FLSA." However, under language of 3(m) and the regulations (29 CFR 778.116), whether the apartment is part of wages for overtime purposes does not depend on whether Defendant took a credit for it. Nonetheless, and more so here than in *Daniels*, 2011 WL 3648245, at 7 “an apartment was part of the compensation for the position of building superintendent.” (DSOF # 15)(“plaintiff was paid approximately $16.48 per hour, plus he had use and occupancy of an onsite, one-bedroom 576 sq. ft. apartment so long as he remained employed as the live-in superintendent.”).

Defendant also argues that its expert valued the apartment at $0. However, even though the deadline for Plaintiff to respond to said expert report is a date after these motions have been decided, as previously explained, Defendant's expert valued the apartment at about $1750 and the reasons for transforming this value to zero, are baseless and legally erroneous - and Defendant did not address these reasons. (Pl. Memo 11-12). In fact, Defendant admits “Each resident of Columbia Street is subject to a lease and **pays rent**.” (Def Memo 15). The whole idea is to ascertain the reasonable value to the Plaintiff so the true amount of his actual compensation can be ascertained - value that Plaintiff would have to pay if he had to rent a similar apartment nearby. The residents in Defendant’s building and the government agencies who together pay millions of dollars in rent to Defendant (Sams Dep. Tr. 28), may have a lot of questions as to why they have been paying so much rent for apartments that Defendant’s expert valued at $0.

**7. DEFENDANT LIABLE FOR WAGE STATEMENT/NOTICE CLAIMS**

Defendant appears to now argue that even if it violated the wage notice and wage statement requirements as already addressed (Pl. Supp. Memo pg. 16-17), it is not liable because “PCMH

made complete and timely payment of plaintiff's wages, an affirmative defense to NYLL wage notice and wage statement violations" (Def. Mem. 25) - but as explained throughout, Defendant failed to pay Plaintiff proper and required wages and overtime wages.

**8. DEFENDANT'S CONDUCT WAS WILLFUL**

In terms of willfulness, the cases cited by Defendant do not appear to involve the type of violations in this case. Here, Defendant's own records show that there was no punch in and out for lunch. Yet, without knowing whether Plaintiff actually took lunch or was working, Defendant intentionally and by policy, deducted an hour for lunch. (Ex. 5); (Hunter Tr. 50:11-15). Also, Defendant's own policies and practices intentionally required Plaintiff to work on call without pay. (Ex. 4, 15). At minimum, Defendant's assumption that on-call work that was not physical could not constitute work under the FLSA and NYLL was not just reckless, it was grossly reckless and likely very intentional given settled law to the contrary. There is no evidence in the record that Defendant took any steps to ascertain whether on-call time other than physical work time constituted work under the FLSA and NYLL. In addition, we have an effort to post posters for the counselors on the fifth floor but no effort to conspicuously post a wage poster for the Plaintiff. Therefore, it is easy to see that Defendant's conduct was unlawful and willful. (PASOF ¶ 80-91).

**9. EQUITABLE TOLLING APPLIES**

Defendant's admission that the wage posters were posted on the fifth floor where Plaintiff was not stationed - unlike the counselors, and where according to Defendant, Plaintiff sometimes entered to clean and escort persons (Def. Opp. Mem. 14), establish as a matter of law that Defendant failed to meet the "conspicuous" posting and "observe readily," requirements of the FLSA and NYLL. This is especially true, where, as here, Plaintiff testified that he never saw the posters and there is no testimony to contradict Plaintiff on this point. (PASOF ¶ 69-70). Furthermore, Defendant has only produced copies of posters for a period after Plaintiff's

employment ended and after this lawsuit began. (Pl. Memo 19; Hassan Decl. ¶ 26). There is no testimony from anyone who was stationed on the fifth floor to even attempt to create an issue of fact that the required posters were posted or properly posted during Plaintiff's employment. Defendant deceptively claims that Sams was not questioned much, but this was because she did not know much. Contrary to Defendant's assertion Ms. Sams was questioned for a relatively short period of time because she appeared to be a stranger to Plaintiff and the case and like Ms. Hunter did not have personal knowledge of Plaintiff and his work or of the building. Unlike her original declaration in this case, Ms. Sams submitted an opposing declaration with two paragraphs about the wage posters. Significantly, Sams does not state that she saw the wage posters in the building, or that she ever saw any required poster posted during Plaintiff's employment - her testimony cannot defeat Plaintiff's motion. See also *Daniels* (Case 10-CV-22, ECF No. 24 – requiring defendant to provide specific information about wage posters based on personal knowledge.).

Although under *Veltri*, 393 F.3d at 326, Defendant can defeat equitable tolling by proving that Plaintiff "had actual knowledge that a cause of action had accrued" and had "actual knowledge of [his] right to sue" there is no dispute or genuine dispute that Plaintiff only had actual knowledge of his causes of action when he met his counsel on February 2, 2019. (Hassan Decl. ¶ 5). Even though the wage notice and wage statement requirements were not complied with, the wage notice and wage statements required by NYLL 195 are not a substitute for the wage posters.

Under *Veltri*, 393 F.3d at 326, a Defendant that seeks to defeat equitable tolling through the "equitable defense of laches must establish both plaintiff's unreasonable lack of diligence under the circumstances in initiating an action, as well as prejudice from such a delay." As a matter of law, Defendant cannot prove any of these two requirements even though it must prove both. As to "diligence under the circumstances in initiating an action," Plaintiff initiated this action less than two weeks after acquiring actual knowledge of his cause of action and right to sue. (Hassan Decl. ¶

5, 6). Moreover, Defendant cannot show undue prejudice especially for the period dating back to February 15, 2013 – Defendant had to keep records at least going back to February 15, 2013 under the six-year SOL period of NYLL 663, 198 for bringing overtime claims – Defendant has records even before this that it has refused to produce (Hassan Decl ¶ 34), and has even relied on Plaintiff's work going back to 2008/2009 at its first two locations – Guthiel and 50th Street.

Defendant also cites to *Patraker v. Council on the Env't,* No. 02-cv-7382 (LAK) 2003 WL 22703522 (S.D.N.Y. Nov. 17, 2003). However, unlike *Patraker*, the limited representation of the unemployment insurance attorney in this case was not due to any lack of due diligence – it was because of the limited scope of unemployment proceedings imposed by law. See also NYLL 623(2). Further, *Patraker* and other cases relied upon by Defendant were decided before or did not fully/properly address/apply *Veltri* which is the proper and controlling precedent here. Also, Defendant did not address the impact of *Cheeks* on equitable tolling. (Pl. Memo.18-21).

## III. CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that this Honorable Court: 1) deny Defendant's motion for summary judgment in its entirety; 2) grant Plaintiff summary judgment dismissing Defendant's defenses/affirmative defenses and grant summary judgement to Plaintiff as to both liability and damages on all his claims under the FLSA and NYLL for the period October 19, 2009 to June 6, 2016.

Dated: Queens Village, New York
September 22, 2020

Respectfully submitted,

Abdul Hassan Law Group, PLLC

/s/ Abdul Hassan

**By: Abdul K. Hassan, Esq. (AH6510)**
*Counsel for Plaintiff Jose Perez*
215-28 Hillside Avenue, Queens Village, NY 11427
Tel: 718-740-1000 - Fax: 718-740-2000 - Email: abdul@abdulhassan.com