UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

JOSE PEREZ,

                    Plaintiff,              **MEMORANDUM & ORDER**
                                            19-CV-0931(EK)(PK)

        -against-

POSTGRADUATE CENTER FOR MENTAL
HEALTH,

                    Defendant.

------------------------------------x

ERIC KOMITEE, United States District Judge:

        Jose Perez was the live-in superintendent at one of
Defendant's residential facilities in Brooklyn.  He claims that
he worked far in excess of the hours for which he was paid and
was regularly expected to be "available" to work day and night.
Plaintiff brought this action under the Fair Labor Standards Act
("FLSA") and the New York Labor Law ("NYLL") for unpaid wages
and for alleged violations of the NYLL's notice requirements.
The parties now cross-move for summary judgment on all claims.
For the following reasons, Plaintiff's motion is denied;
Defendant's motion is granted in part and denied in part.  This
case will proceed to trial on all but the NYLL wage-notice and
wage-statement claims, and the unpaid wage claims regarding
meal-time hours.

## I.   Facts

The following facts are taken from the evidentiary record and the parties' Rule 56.1 statements, and are undisputed unless otherwise noted.

Postgraduate Center for Mental Health ("PCMH") is a non-profit organization that provides healthcare services and housing for people suffering mental illness, chronic homelessness, and drug dependence.  Def.'s 56.1 Statement ¶ 3, ECF No. 38-1; Def.'s Response to Pl.'s 56.1 Statement ¶ 2, ECF No. 45.  PCMH operates residential facilities throughout New York City.  Def.'s 56.1 Statement ¶ 3.

Jose Perez worked at various PCMH residences between June 2008 and June 2016.  Def.'s Response to Pl.'s 56.1 Statement ¶ 5.  This action arises from his employment from 2009 to 2016 as the live-in superintendent at the Columbia Street residence in Brooklyn.  *See id*. ¶ 6.  Plaintiff's responsibilities there included maintenance and cleaning tasks such as sweeping the floors, dusting furniture, maintaining the compactor room and preparing vacant apartments.  Perez was also responsible for responding to building-related emergencies.  *See* Superintendent Job Description at 1, ECF No. 38-3 ("Job Description").  Plaintiff lived at the residence in a rent-free, one-bedroom apartment.  *See* Live-in Superintendent Lease Agreement at 1, ECF No. 38-3 ("Lease Agreement").  PCMH says

2

Plaintiff's regular work schedule was Sunday through Thursday from 8:00 a.m. to 4:00 p.m.  *See* Deposition of PCMH's Rule 30(b)(6) Witness 45:20-23, ECF No. 46-1 ("PCMH Dep.").  A condition of Plaintiff's rent-free apartment lease, however, called for him to "address building situations after [his] normal business hours."  Lease Agreement at 1.

PCMH operates a timekeeping system to keep track of employee hours.  Plaintiff was required to "clock in" and "clock out" at the beginning and end of his shift, as well as whenever he worked outside of that period.  *See* Declaration of Danielle Hunter ¶¶ 9-10, ECF No. 46 ("Hunter Decl.").  PCMH would then use the time records to pay Plaintiff for hours worked.  *See id.* ¶¶ 7-10.

Plaintiff testified that he regularly worked outside of his scheduled 8:00 a.m. to 4:00 p.m. hours, but was not compensated for that work.  He testified that director Harold Moss (to whom he reported directly) and supervisor Steven Pinks[1] both instructed him to clock out at the end of his shift at 4:00 p.m. and then continue to work.  *Deposition of Jose Perez* 38:8-22, 60:4-15, 63:18-64:2, ECF No. 45-2 ("Perez Dep.").

---

[1]  Plaintiff had at least three supervisors at PCMH:  Steven Pinks, Sabrina Taylor, and Nicole Henry (who Plaintiff sometimes referred to as Sabrina Henry at his deposition).  Plaintiff vacillated between calling these employees "director" and "supervisor."  Perez Dep. 36:11-14; 219:6-10.  This Order will refer to them by the "supervisor" title.

According to Plaintiff, Moss told him that the Columbia Street residence is a "24 hour[] establishment," *id.* 38:15-19, and that he "had to spend whatever time was necessary to care for the building," Declaration of Jose Perez ¶ 20, ECF No. 43-3, and Pinks told Plaintiff that when he was "needed," he "need[s] to come out of [his] apartment." Perez Dep. 63:13-17. Plaintiff also stated that when he worked overtime, "I didn't go to the time clock and punch in and that was something I wasn't doing. I would just go straight to the problem. Big mistake." *Id.* 223:2-6. In addition, Plaintiff testified that (1) he would regularly work through his one-hour lunch break, but that PCMH would automatically deduct that hour from his wages, *id.* 123:10-20, and (2) he was "on call" after hours, responding to an "emergency" at least every other night. *E.g.*, *id.* 41:16-43:14; 64:5-11.

Plaintiff testified that he worked "thousands" of uncompensated overtime hours. *Id.* 183:4-5. He also contends that even when Defendant did pay overtime, it did so at too low a rate because PCMH omitted the value of Plaintiff's rent-free apartment from the base compensation to which his overtime rate was applied. Plaintiff also maintains that PCMH did not provide the wage notices and statements required by the NYLL. He seeks unpaid wages and liquidated damages under the state and federal

laws, in addition to statutory damages under sub-sections 195(1) and 195(3) of the NYLL.

Plaintiff moves for summary judgment on all claims. Defendant cross-moves, arguing that Plaintiff has failed to carry his evidentiary burden on his overtime, on-call, and meal-break claims; that the wage-notice claims are precluded as a matter of law; the NYLL overtime claims are precluded by the so-called "janitorial exemption"; and the FLSA claims are time-barred.

## II.    Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party may establish that there is no genuine dispute "by showing that little or no evidence may be found in support of the nonmoving party's case."  *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  If the moving party meets this burden, the non-moving party "must come forward with specific facts showing

5

that there is a genuine issue for trial." *LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998).  If "no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted." *Id*. (internal quotations omitted).  The same standard of review applies where, as here, the parties cross move for summary judgment.  *E.g.*, *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 349 (E.D.N.Y. 2015).  "When evaluating cross-motions for summary judgment, the Court reviews each party's motion on its own merits and draws all reasonable inferences against the party whose motion is under consideration." *Gustavia Home, LLC v. Hoyer*, 362 F. Supp. 3d 71, 78 (E.D.N.Y. 2019) (citing *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)).

## III. Discussion

### A.   Off-the-Clock Claims

Plaintiff seeks damages for the unpaid time that he allegedly worked, but admittedly did not record in Defendant's timekeeping system (his "off-the-clock" claims).  He claims to have worked off-the-clock regularly during his one-hour lunch break and after 4:00 p.m.

To establish liability for unpaid overtime, an employee must prove that he "performed work for which he was not properly compensated, and that the employer had actual or

6

constructive knowledge of that work." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946)).  Whether an employer has actual or constructive knowledge that a plaintiff worked overtime is an issue of fact.  *Murray v. City of New York*, No. 16-CV-8072, 2020 WL 615053, at *8 (S.D.N.Y. Feb. 10, 2020).

"[I]f an employer's records are inaccurate or inadequate, an employee need only present 'sufficient evidence to show the amount and extent of the uncompensated work as a matter of just and reasonable inference.'" *Kuebel*, 643 F.3d at 362 (quoting *Anderson*, 328 U.S. at 687).  An employee can meet this burden "based on his own recollection." *Id*.  "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Anderson*, 328 U.S. at 687–88.

1.   Shift Continuing After Clocking Out

Plaintiff claims that he regularly worked after the conclusion of his 8:00 a.m. to 4:00 p.m. shift, but was not compensated for that work.

The FLSA does not prohibit an employer from requiring employees to log their time in order to receive pay for time worked, as PCMH did here. *Desilva v. N. Shore-Long Island*

7

*Jewish Health Sys., Inc.*, 27 F. Supp. 3d 313, 322 (E.D.N.Y. 2014).  An employer may not, however, "prevent an employee from reporting overtime work that he or she actually performed."  *Id.*

　　　Plaintiff testified that he regularly clocked out at 4:00 p.m. and kept working.  *E.g.*, Perez Dep. 40:8-9.  He admits that he failed to clock in for at least some overtime hours that he worked.  *See* Perez Dep. at 223:3-6 ("I didn't go to the time clock and punch in and that was something I wasn't doing.  I would just go straight to the problem.  Big mistake."); *see also* 151:5-15 ("And at that point I didn't even punch in or nothing actually.  Just go right to whatever the problem was on my day off and get the job done, whatever the case may be.").  Plaintiff stated that he worked "several thousands of hours" of unrecorded overtime, for example.  *Id*. 183:4-7.

　　　This failure might preclude a claim for overtime pay *if* it were probative of the employer's lack of knowledge of the overtime work at issue.  *Cf. Kuebel*, 643 F.3d at 365 (denying summary judgment where employee specifically complained to his supervisor that he was working more than forty hours per week but recording only forty).  But Perez testified, here, that his failure to clock in was due at least in part to orders he received from his supervisors.  Specifically, he testified that director Harold Moss and supervisor Steven Pinks told him to "punch [out] at 4 o'clock and then [] continue to work."  Perez

8

Dep. 38:6-22; 60:3-11; 65:3-9; *see also* Perez Decl. ¶ 20.
(Harold Moss told Plaintiff to clock out at 4:00 p.m. and
continue working).

There is also evidence that one of Plaintiff's
supervisors, Sabrina Taylor, was on notice that he was working
overtime.  Plaintiff "constantly" told Ms. Taylor that he was
getting called in to work almost every night.  Perez Dep.
136:22-137:3.  He states that she responded that it was "the
nature of the job."  *Id.* 137:20-138:4.  Plaintiff understood
that when he told Ms. Taylor something, Ms. Taylor would relay
that information to Mr. Moss.  *Id.* 137:6-8.  Plaintiff also
testified that he told the "front desk person" and the "program
director" whenever he had to work.  *Id.* 119:22-120:5.  He stated
at his deposition that the "people [at] the front desk" and
another of his supervisors, Nicole Henry, would be able to
verify his overtime claims.  *Id.* 219:2-15.  Plaintiff deposed
none of these employees, however.

PCMH points to evidence that Plaintiff knew he had to
record his time in order to receive overtime compensation and
still failed to do so.  Plaintiff testified that he was "allowed
. . . to punch in" for certain "special assignments," such as
stripping and waxing the floors, and would get paid overtime for
that work.  *Id.* 157:19-158:25; *see also id.* 220:19-22 ("I was
told to punch in at specific times to do specific jobs.").  In

9

addition, Plaintiff testified that he would tell his supervisor when he forgot to record his time. *Id.* 192:6-25 (Plaintiff testified that he would tell his supervisor, "listen[,] I came out and I worked a little overtime," and she "would put the time in" for him). This is not a defense, however, if the employer nevertheless had notice of the overtime work. *Kuebel*, 643 F.3d at 363.

In the end, Plaintiff's evidence in support of his "off-the-clock" claim is relatively thin, consisting almost entirely of his own testimony. Some of his assertions are in tension with one another, if not contradictory. He blames Moss for telling him to clock out daily at 4:00 pm, but he seems simultaneously to take the blame on himself for not clocking overtime hours after that. *Compare* Perez Dep. 38:6-22 (Moss told Plaintiff to "punch [out] at 4 o'clock and then [] continue to work") *with id.* 223:2-6 ("I didn't go to the time clock and punch in and that was something I wasn't doing. I would just go straight to the problem. Big mistake.").

But summary judgment is not appropriate on this record. In the Second Circuit, "once an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation simply because the employee failed to properly record or claim his overtime hours." *Kuebel*, 643 F.3d at 363. That "an employee is required to submit his own timesheets does

10

not necessarily preclude him from invoking *Anderson*'s standard where those records appear to be incomplete or inaccurate." *Id.* The time and pay records that Defendant produced, though extensive, do not negate the inference that Plaintiff worked hours for which he was not compensated where the nature of Plaintiff's claim is that he was told not to clock in. *E.g.*, *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 465 (E.D.N.Y. 2015) ("Consideration of this extrinsic evidence provides little probative value for this claim because plaintiffs plausibly allege that defendants did not account for hours they worked 'off-the-clock;' therefore, these unaccounted-for hours would not appear in the wage statements furnished by defendants.").[2]

There thus remains a dispute of material fact as to whether PCMH was on notice that Plaintiff worked overtime hours that were not recorded, which precludes summary judgment on Plaintiff's overtime-wage claim regarding post-clock-out work.

2.  Working Over the Lunch Break

Plaintiff also contends that Defendant's automatic deduction for lunch was improper because he regularly worked

---

[2] Moreover, Plaintiff did not concede that Defendant's overtime records are correct, as Defendant contends.  For example, Plaintiff testified that he was uncertain if the 2015 overtime records were accurate, Perez Dep. 244:19-245:15, and that he believed the 2016 overtime records to be accurate in "some cases," id. 220:19-22.

through his lunch break.  Courts in this Circuit have held that automatic meal-deduction policies are not *per se* illegal. *Desilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 27 F. Supp. 3d 313, 321 (E.D.N.Y. 2014) (collecting cases).  But "meal periods are compensable under the FLSA when employees during a meal break perform duties predominantly for the benefit of the employer."  *Reich v. S. New Eng. Telecomms. Corp.*, 121 F.3d 58, 65 (2d Cir. 1997).  Again, in order to claim such overtime, the employee must demonstrate that the employer had constructive or actual knowledge of the time worked.  *Desilva*, 27 F. Supp. 3d at 322.

It is undisputed that PCMH's policy was to automatically deduct one-hour for lunch.  PCMH Dep. 42:20-43:11; Perez. Decl. ¶ 29.  Plaintiff testified that he never took the full hour; he would instead "go out and get a quick bite real quick at the bodega."  Perez Dep. 123:17-20.  Plaintiff also addressed this issue at length in his declaration.  He attests that one day a week, he "did not eat lunch at all because of the demands of the job"; two days a week, he "would take about 5-10 minutes to eat food [he] bought from the bodega in the morning"; and two days a week, he would "take 10-15 minutes to buy a snack at the nearby bodega and eat and come back and start working right away."  Perez Decl. ¶ 29.  On this claim, too, Plaintiff's

evidence of overtime work consists entirely of his own testimony.

Defendant submitted an affidavit from Edna Sams, the Regional Director of PCMH, attesting that she visited the Columbia Street residence on "multiple occasions" during the "mid-day period" and "plaintiff always took his lunch break for the entire hour and generally went off site to do so." Declaration of Edna Sams ¶ 23, ECF No. 47 ("Sams Decl."). In addition, she avers that "should an employee work during a meal break, the employee is required to notify a supervisor so that the time and pay may be reflected in the attendant wage statement." *Id*. ¶ 22. Plaintiff attests that he was "never instructed or required by Defendant to notify Defendant if [he] took less than an hour to eat/have a meal or did not take any time to eat." Perez Decl. ¶ 31. Plaintiff has produced no evidence, however, from which a jury could conclude that he informed his supervisors that he was working through lunch, that they observed him doing so, or that they otherwise had actual or constructive knowledge of this alleged work. *Desilva*, 27 F. Supp. 3d at 322.

There is therefore no dispute of material fact as to whether Defendant knew Plaintiff worked during his lunch hour. Defendant's summary judgment motion as to the unpaid wage claim regarding meal-time work is granted (and Plaintiff's is denied).

13

B.   **On-Call Claim**

Plaintiff claims that he was "on call" twenty-four hours a day at the Columbia Street residence but was not compensated for that time.  "On call" time can be compensable under the FLSA where an employer restricts an employee's ability to freely use his time for his own benefit.  *O'Neill v. Mermaid Touring Inc.*, 968 F. Supp. 2d 572, 582 (S.D.N.Y. 2013) (citing *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944)).  Justice Jackson explained (in reference to a security guard's overtime claim):  "Readiness to serve may be hired, quite as much as service itself, and time spent lying in wait for threats to the safety of the employer's property may be treated by the parties as a benefit to the employer."  *Armour & Co.*, 323 U.S. at 133.

Plaintiff's claim thus implicates a question that frequently recurs in the "on call" context: was he "engaged to wait" or "waiting to be engaged"?  "Engaged to wait" — the circumstance described in *Armour* — is now defined by regulation to mean that "waiting [was] an integral part of the job" and any period of inactivity was "unpredictable" and of "short duration."  29 C.F.R. § 785.15.  An employee waits to be engaged (and is entitled to no compensation for waiting), on the other hand, when the period(s) of inactivity are "long enough to enable [him] to use the time effectively for his own purposes."

14

29 C.F.R. § 785.16; *see also Skidmore v. Swift & Co.*, 323 U.S.
134, 137 (1944).

Plaintiff has adduced evidence that, as the live-in
super, he was expected to be available at all hours.
Plaintiff's lease agreement provided that he "will be required
to address building situations after [his] normal business
hours."  Lease Agreement at 1.  His job description stated that
he would have to "respond to emergency situations," Job
Description at 1, which Plaintiff testified occurred every other
night on average.  Perez. Dep. 41:16-43:14; 64:5-11; 88:2-6.
And Defendant's Rule 30(b)(6) witness acknowledged that "as part
of the requirements in his lease, [Plaintiff] was on call
twenty-four hours; that was the condition."  PCMH Dep. 50:7-10;
*see also* 47:14-20 (stating Plaintiff "was on call for twenty-
four hours").  Plaintiff testified that he would start getting
calls to come back to work around 6:30 p.m., Perez Dep. 134:3-5,
that he was always "waiting on calls" at night, *id*. 134:15-21,
and that he was woken up about four nights out of the week with
"emergency" work calls.  *Id*. 141:24-25.

Defendant disputes that Plaintiff actually responded
to emergencies with any frequency, pointing to the paucity of
"incident reports" at Columbia Street.  During his employment in
2016, for example, there were six documented emergency incidents
at the residence, and of those six, Plaintiff worked on one

incident, which occurred during his regular shift.  *See* 2016
Incident Reports at 628-42, ECF No. 45-2.  Defendant also points
to evidence that Plaintiff was able to use his time after work
freely.  Plaintiff testified that he would watch television in
the evenings, Perez Dep. 47:10-16, have his girlfriend and other
guests over to his apartment, *id*. 47:17-48:24, 49:24-50:2, and
go to a bar nearby and consume alcohol.  *Id*. 51:22-24, 52:4-14.

        Nevertheless, Defendant does not dispute that Perez
had to remain close by, or that the lease required him to
respond to emergencies at all hours.  On this record, a genuine
issue of material fact remains as to how much time Plaintiff was
required to stay on premises waiting for after-hours calls.  *See*
*Redzepagic v. Hammer*, No. 14-CV-9808, 2017 WL 780809, at *8
(S.D.N.Y. Feb. 27, 2017) (questions of fact existed as to "how
much time spent on the premises constitutes work" where
superintendent testified that he was "able to watch TV, use the
computer, go to the gym, and run errands" while he was on call);
*O'Neill*, 968 F. Supp. 2d at 582 ("There is conflicting evidence
as to whether Plaintiff was able to use time spent 'on-call' for
[his] personal use.  This is a fact-specific inquiry best left
to the fact finder."); *cf. Moon v. Kwon*, 248 F. Supp. 2d 201,
230 (S.D.N.Y. 2002) (finding, after a bench trial, that "[w]hile
the defendants argue that the hotel did not require [plaintiff]
to spend his evenings in the hotel and that [plaintiff] in fact

16

spent much of this time socializing with his friends and coworkers in the hotel basement, rather than actually performing any work, the evidence supports [plaintiff's] contention that he was not as free to leave the premises during the evening as the defendants claim and he routinely spent his evenings performing maintenance and repair tasks . . . ."). Plaintiff must prove at trial, however, the particular hours outside of 8:00 a.m. to 4:00 p.m. that he was "engaged to wait." *See, e.g.*, *Moon*, 248 F. Supp. 2d at 224 (finding plaintiff was not on-call during night-time (as opposed to evening) hours where "defendant made no effort at trial to distinguish between the time he spent at night working and the time he spent waiting or sleeping in the hotel — which, after all, was his home at the time — or to quantify the frequency and extent of his night-time work assignments").

The parties' cross-motions for summary judgment on the overtime claim for on-call work are denied.

## C.    Value of the Superintendent Apartment

Plaintiff contends that even when PCMH did pay him overtime, it calculated his overtime wage incorrectly. PCMH did this, he argues, by failing to include the value of the superintendent's apartment — provided free of charge as part of Perez's compensation — in the calculation of his overtime rate.

17

Defendant concedes it did not do so, but argues it was not necessary because the apartment had no value.

The definition of "wage" under the FLSA "includes the reasonable cost . . . to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees." 29 U.S.C. § 203(m)(1). The FLSA regulations require that "[w]here board, lodging, or other facilities are customarily furnished as additions to a cash wage, the reasonable cost of the facilities to the employer must be considered as part of the employee's regular rate of pay." 29 C.F.R. § 531.37.

It is undisputed that, as the live-in superintendent, Plaintiff was provided a rent-free one-bedroom apartment at the Columbia Street residence between October 2009 and June 2016. The parties dispute, however, the value of the apartment. Defendant submitted a report drafted by a real estate appraiser that valued the apartment's "market" rent at zero. The appraiser based this valuation on the fact that the building houses tenants in need of homeless services and that it is located in a middle-class neighborhood. Report at 15, ECF No. 45-3. Plaintiff contends that the apartment is worth approximately $2,000 a month. Perez Dep. 110:13-111:2. He

18

determined this figure by asking local realtors the monthly rent of one-bedroom apartments in the neighborhood.  *Id.* 111:4-20.

This raises a disputed issue of fact for a jury.  The parties' cross-motions for summary judgment on this issue are therefore denied.

**D.   NYLL Annual Wage-Notice Claim**

Plaintiff claims that he is also entitled to damages for Defendant's alleged failure to provide him with annual wage notices under Section 195(1) of the NYLL.  This claim is precluded as a matter of law.

Section 195(1), as amended by New York's Wage Theft Prevention Act ("WTPA") in April 2011, required employers to provide wage notices on paper or electronically at the time of hiring (the "initial notice") and on or before the February of each subsequent year of employment (the "annual notice").  N.Y. Lab. Law § 195(1-a) (effective April 9, 2011 to Feb. 27, 2015). An employee hired after April 2011 could seek damages if the employer did not provide the *initial* wage notice; this provision, however, did not authorize a private cause of action for the annual wage-notice violation.  *Cabrera v. Canela*, 412 F. Supp. 3d 167, 184-85 (E.D.N.Y. 2019) (collecting cases).  In 2015, when the WTPA was amended, the annual wage-notice requirement was removed entirely.  *Gamero v. Koodo Sushi Corp.*,

272 F. Supp. 3d 481, 510 n.13 (S.D.N.Y. 2017), *aff'd*, 752 F. App'x 33 (2d Cir. 2018).

PCMH hired Plaintiff in June 2008 — almost three years before the initial wage-notice requirement went into effect. Perez Dep. 25:3-6.  He therefore cannot seek damages on the initial wage-notice claim.  *E.g.*, *Cabrera*, 412 F. Supp. 3d at 184-86.  In addition, New York state law provided no private right of action for an employer's failure to provide annual wage notices between 2011 and 2015.  *Id.*  Accordingly, Defendant's motion for summary judgment on the wage-notice claim is granted and Plaintiff's is denied.

**E.    NYLL Wage Statement Claim**

Plaintiff also claims that his wage statements failed to comply with Section 195(3) of the NYLL.  That section dictates the contents of the statement that an employer must provide an employee upon payment of wages.  The wage statement must contain:

> the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages . . . the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

N.Y. Lab. Law § 195(3).

Defendant produced the Plaintiff's wage statements for 2013 through 2016, covering the six-year NYLL statute of limitations period.  Plaintiff argues that Defendant violated Section 195(3) because they omitted Defendant's "correct legal name" and address.  Pl.'s Br. in Support of Motion at 17, ECF No. 43-1.  This argument is unavailing.

The statements from 2013 to 2014 listed "Postgraduate Center" as the employer and those from 2015 to 2016 listed "Postgraduate Center for Mental Health."  And all of the statements contained the Defendant's headquarters' address at 158 East 35th Street in Manhattan.  To the extent Plaintiff is arguing that he is entitled to damages because the wage notices showed his employer's name as "Postgraduate Center" rather than the fuller "Postgraduate Center for Mental Health," his claim falters on Article III standing grounds.  In *Spokeo, Inc. v. Robins*, the Supreme Court held that Article III's "injury-in-fact requirement requires a plaintiff to allege an injury that is both 'concrete and particularized.'"  136 S. Ct. 1540, 1545 (2016) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)).  The "concrete" requirement refers to the "realness" of the injury, the Court held; the injury cannot be merely "abstract."  *Id*. at 1548.  The particularity requirement, in turn, means that an

21

injury "must affect the plaintiff in a personal and individual way."  *Id*.

Spokeo's majority went on to hypothesize a specific example of a statutory violation that causes no concrete harm, and that example is strikingly similar to Perez's NYLL Section 195(3) allegation here.  The Court wrote that "not all inaccuracies cause harm or present any material risk of harm. An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm."  *Spokeo, Inc.*, 136 S. Ct. at 1550.  The same sentiment applies to the omission of the words "for Mental Health" in PCMH's name. Plaintiff testified that he "of course" understood "Post Graduate Center" to be his employer and also that he had visited the 158 East 35th Street office on more than one occasion. Perez Dep. 32:19-33:19; 76:18-77:25.  Therefore, Defendant's motion for summary judgment on the Section 195(3) claim is granted and Plaintiff's is denied.

**F.   "Residential Janitor" Exemption to NYLL**

Defendant moves for summary judgment on the NYLL overtime claims on the contention that the state law exempts employers from paying overtime to people with Plaintiff's job description.  The New York Department of Labor's Minimum Wage Order for the Building Service Industry mandates that "[a]n

22

employer shall pay an employee, except a janitor in a residential building, for overtime at a wage rate of 1½ times the employee's regular rate for hours worked in excess of 40 hours in a workweek."  12 N.Y.C.R.R. § 141-1.4.  A defendant invoking the "janitorial exemption" bears the burden of establishing it applies.  *E.g.*, *Koljenovic v. Marx*, 999 F. Supp. 2d 396, 399 (E.D.N.Y. 2014).  "Deciding whether the exemption applies may require the court to consider both questions of fact and law."  *Id.*

The Minimum Wage Order ("MWO") creating the exemption applies only to employers in the "building service industry," however, and the parties dispute whether PCMH is in that industry.  The MWO defines "building service industry" to *exclude* "any building owned, operated and used solely for religious, charitable or educational purposes by a nonprofit organization organized exclusively for religious, charitable or educational purposes, no part of the net earnings of which inures to the benefit of any private shareholder or individual." 12 N.Y.C.R.R. § 141-3.1(b).  Whether a given set of activities qualify as religious, charitable or educational (so as to render the employer exempt) is a question of law.  *Koljenovic*, 999 F. Supp. 2d at 399.

Defendant claims it does not use the building "solely for religious, charitable, or educational purposes."  Def.'s

Reply Br. at 4, ECF No. 50.  PCMH does collect rent from

tenants: it generates over $500,000 in such revenues annually.

Def.'s Response to Pl.'s 56.1 Statement ¶¶ 1, 3.  But it is

undisputed that Defendant is a non-profit organization,

chartered by the New York Board of Education, that provides

healthcare services and housing to persons with mental illness.

PCMH Dep. 34:2-6; Def. Response to Pl.'s 56.1 Statement ¶¶ 1-3.

Defendant's Rule 30(b)(6) witness testified that PCMH has no

shareholders and no earnings are distributed to any person at

the end of the year, PCMH Dep. 34:2-13, and this testimony, too,

is undisputed.  It is accordingly clear that PCMH is excluded

from the MWO's terms.  Defendant's summary judgment motion on

the residential janitor exemption is denied.

## G.   FLSA Statute of Limitations

Defendant also moves for summary judgment on the basis

that Plaintiff's FLSA claims are all time-barred.  The FLSA

"provides a two-year statute of limitations on actions to

enforce its provisions, except that a cause of action arising

out of a willful violation may be commenced within three years

after the cause of action accrued." *Parada v. Banco Indus. de*

*Venezuela, C.A.*, 753 F.3d 62, 70 (2d Cir. 2014) (citing

29 U.S.C. § 255(a)).  "Mere negligence is insufficient." *Young*

*v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009)

(citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133

(1988)).  Plaintiff was terminated by PCMH on June 6, 2016, and he brought this case more than two (but less than three) years later, on February 15, 2019.  Defendant argues that because Plaintiff cannot establish "willfulness," the FLSA's two-year statute of limitations bars his federal claims.[3]

An employer willfully violates the FLSA when it "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin*, 486 U.S. at 133.  Reckless disregard involves "deliberate disregard of the risk that one is in violation" of a known legal requirement. *Damassia v. Duane Reade, Inc.*, No. 04-CV-8819, 2005 WL 1214337, at *3 n.2 (S.D.N.Y. May 20, 2005).  The employee bears the burden of proof on the willfulness issue. *Parada*, 753 at 71.  Willfulness is generally a question of fact for the jury. *See e.g.*, *Eschmann v. White Plains Crane Serv., Inc.*, No. 11-CV-5881, 2014 WL 1224247, at *5 (E.D.N.Y. Mar. 24, 2014) (collecting cases).

Defendant contends that it did not act willfully because it "maintained appropriate time records, policies, and practices regarding the payment of overtime."  Def.'s Br. in Support of Motion at 10, ECF No. 41.  Indeed, Defendant produced

---

[3] The NYLL has a six-year statute of limitations regardless of willfulness.  NYLL § 663(3).  Therefore, claims accruing prior to February 15, 2013 are barred under the NYLL.

extensive and detailed time records and wage statements from 2013 to 2016.  The wage statements indicate that Defendant paid Plaintiff for overtime that he recorded on Defendant's timekeeping system.  Defendant also made those wage statements available to the Plaintiff at the Columbia Street residence front desk, though he admits that he did not always look at them.  Perez Dep. 110:4-12.  Nonetheless, Plaintiff testified that Defendant's employees instructed him not to record his hours outside of his 8:00 a.m. to 4:00 p.m. schedule, and at the same time to "spend whatever time was necessary to care for the building."  Perez Decl. ¶ 20.  He also testified that his supervisors knew that he was working uncompensated overtime.

As noted above, Plaintiff has adduced virtually no proof for these contentions apart from his own testimony.  His own testimony may, however, suffice as a matter of law if credited by the jury. *Eschmann*, 2014 WL 1224247, at *5.  And if proved, these allegations could suffice to establish willfulness — especially if the jury credits Perez's testimony that the Defendant's employees ordered him not to record the majority of his overtime hours. *See Kuebel*, 643 F.3d at 366 (willfulness established where defendant was "aware that Retail Specialists' responsibilities would push them very close to, if not over, the forty-hour threshold," and plaintiff's "managers conveyed to him that he should do what it takes to finish the job, but not

26

record any overtime"); *Foster v. City of New York*, No. 14-CV-4142, 2017 WL 11591568, at *22 (S.D.N.Y. Sept. 30, 2017) (denying summary judgment on willfulness where there was evidence that plaintiff's manager told her not to submit overtime requests).  This testimony creates a genuine dispute of material fact, and Defendant's summary judgment motion on willfulness is denied.  If willfulness is not proved at trial, the jury will, of course, be left to find for Defendant on statute-of-limitations grounds.

## H.   Liquidated Damages

        Finally, Plaintiff seeks summary judgment on his claims for liquidated damages.  29 U.S.C. §§ 216(b), 260; N.Y. Lab. Law § 663(1).  An employer who violates the overtime-wage provisions is liable for "the payment of wages lost and an additional equal amount as liquidated damages," 29 U.S.C. § 216(b), unless the employer can show that it acted in "good faith and that [it] had reasonable grounds for believing that [the] act or omission was not a violation" of the FLSA.  29 U.S.C. § 260.4.  To avoid liquidated damages based on "good faith, the employer must take active steps to ascertain the dictates of the [labor laws] and then act to comply with them." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999).  New York State's labor law, too, provides for liquidated damages.  "While the wording of the FLSA and NYLL liquidated

27

damages provisions are not identical, there are no meaningful differences." *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018).

For the reasons discussed above, there are material facts in dispute as to whether Plaintiff is entitled to summary judgment on his liquidated damages claims. Defendant has adduced evidence that it kept records of Plaintiff's time, provided wage statements to Plaintiff, and paid Plaintiff for all of the overtime work that he recorded. At this stage, viewing the evidence in the light most favorable to the defense (as I must on Plaintiff's motion), a reasonable juror could find that the Defendant acted in good faith. *Worley v. City of New York*, No. 17-CV-4337, 2020 WL 730326, at *10 (S.D.N.Y. Feb. 12, 2020) (dispute of fact regarding "good faith" where defendants proffered evidence that they took measures to comply with the FLSA's compensable work and overtime compensation provisions). In any event, "liability has not yet been determined, which is, of course, a prerequisite for liquidated damages." *Fernandez v. Kinray*, Inc., 406 F. Supp. 3d 256, 266 n.7 (E.D.N.Y. 2018).

Plaintiff's motion for summary judgment on liquidated damages is therefore denied.

## IV.   Conclusion

Plaintiff's motion for summary judgment is denied. Defendant's motion is granted as to the New York Labor Law

claims under Sections 195(1) and 195(3) and denied as to the remaining claims.

SO ORDERED.


/s Eric Komitee
ERIC KOMITEE
United States District Judge


Dated:    August 18, 2021
          Brooklyn, New York